Allstate Insurance Company, Appellee, v. James S. Keller, Appellant.

Gen. No. 47,201.

First District, First Division.

March 10, 1958.

Released for publication May 6, 1958.

McCarthy, Toomey and Reynolds, of Chicago (John E. Toomey, and John M. Kaveny, of counsel) for appellant.

Vogel & Vogel, of Chicago (L. H. Vogel, Robert C. Vogel, and Robert B. Johnstone, of counsel) for appellee.

JUSTICE ROBSON delivered the opinion of the court.

This is an appeal from a declaratory judgment entered in favor of the plaintiff exempting it from any obligation to defend or pay any judgment against the holder of a policy of automobile liability insurance in an action for personal injuries. The question presented is whether or not plaintiff has been relieved of its obligations under the policy by a breach of the co-operation clause on the part of defendant.

The record reveals that on December 18, 1952, an automobile owned by defendant collided with a concrete abutment on South Lake Shore drive in Chicago. The occupants of the automobile were the defendant and one Margaret Eckhardt. Sometime after the accident and before December 30, 1952, defendant reported the accident to plaintiff, his automobile liability insurer. The report bears the notation that defendant was driving the automobile. On December 30, 1952, an agent of plaintiff took a statement from defendant and Margaret Eckhardt in which both said that defendant had been driving at the time of the accident. Miss Eckhardt filed a suit against defendant on August 17, 1953, to recover $100,000 for injuries sustained by her in the accident.

Thereafter on September 9, 1953, defendant gave a written statement to plaintiff, at its office, in which he stated that Margaret Eckhardt, not he, had been the driver of the automobile at the time of the accident. Within two weeks after defendant's disclosure plaintiff had its attorneys file their appearance for defendant. They are not the attorneys who represent plaintiff in the instant case. Subsequently the attorneys filed

46

an answer admitting that defendant had been the driver of the automobile at the time of the accident. On May 25, 1954, plaintiff's attorneys took a thirty-page deposition of defendant in which he related in detail the facts pertaining to the accident, and again asserted that Margaret Eckhardt had been the driver of the automobile. The attorney who took the deposition testified at the trial that his firm (which is not one of the attorneys for plaintiff in the instant case) received its salary checks from plaintiff; that at the time of taking defendant's deposition he anticipated the filing of the instant suit for declaratory judgment. He further stated his purpose in taking the deposition was to strengthen plaintiff's position in such an action, and that he did not inform defendant of these facts.

A series of interoffice memoranda from the office of plaintiff indicate that from March, 1954, through January, 1955, plaintiff investigated the facts of the accident to determine the advisability of disclaiming liability on the policy. On February 9, 1955, plaintiff informed defendant by letter that it was reserving its rights to assert a policy defense for defendant's failure to comply with the co-operation clause of the policy. The present action for declaratory judgment was filed on March 22, 1955.

The policy in question contains the following condition applicable to automobile liability coverage:

"The insured shall co-operate with Allstate, disclosing all pertinent facts known or available to him, and upon Allstate's request shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense except for first aid to others."

Plaintiff contends that the false representation by defendant of a material fact, to-wit, the identity of the driver of the car, constitutes a breach of the clause and automatically relieves plaintiff from liability. Defendant contends that there was not a requisite showing of prejudice to the insurer, and further, that plaintiff waived the benefit of any breach by failing promptly to assert its claim. There is no Illinois decision establishing a clear precedent in this area and both parties have found support for their contentions in decisions from other jurisdictions. It is generally conceded that the failure to co-operate must be material to the liability of the insured. There is a divergence of opinion on the necessity of showing prejudice to the insurer. The disparity stems largely from the characterization of the clause as either a condition precedent or a condition subsequent, with prejudice necessary only to establish a breach of the latter. See Note, Insurer's Duty to Defend, 68 Harv. L. Rev. 1436 (1955).

The few reported decisions in Illinois which treat the problem yield no definite standard by which a breach of the co-operation clause in a policy of liability insurance may be determined. See Schneider v. Autoist Mut. Ins. Co., 346 Ill. 137 (1931); Rowoldt v. Farmers Mut. Ins. Co., 305 Ill. App. 93 (1940); Harrison v. United States Fidelity and Guaranty Co., 255 Ill. App. 263 (1929). In the Schneider case, there was unquestionable prejudice to the insurer; in the Harrison case the court recognized the conflict among the courts of other jurisdictions and held that the question of the insured's co-operation was for the jury to determine; in the Rowoldt case, the court held that the insurer had waived the benefit of any breach and indicated further, in strong dictum, that prejudice to the insurer had to be shown before a breach could be established.

A contract of automobile liability insurance is more than a simple agreement between two parties that the

48

insurer will indemnify and defend the insured for losses incurred by him in the negligent operation of his automobile. It is a contract which protects both the insured and the public from the hazards of financial distress to which they may become victims as a result of engaging in traffic upon our streets and highways.

When we consider the millions of vehicles operating on our highways, and the ever increasing number of accidents, it is apparent that a contract of insurance is of vital concern to all who own and operate such vehicles, to their passengers, and to all who venture forth as mere pedestrians. It is not just an agreement limited to the parties but by its very nature has become one cloaked with a public interest. Integrity should be the essence of the agreement. The cost of insurance is based upon the ratio of the claims paid to the risk written. It is the owners and operators of vehicles upon whom the financial burden of maintaining such contracts must ultimately fall. The insurer must primarily depend upon the veracity of the insured in reporting an accident. Collusive claims are difficult to detect. The courts cannot condone or support a doctrine that might ultimately make the cost of insurance protection prohibitive. Compliance with its terms is therefore vital to all who may benefit, either directly or indirectly, from its provisions. For this reason we are of the opinion that strict compliance is in the best interest of the public and not defendant's theory that failure to comply with the co-operation clause must be shown to be prejudicial to the insurer in order to constitute a breach which would allow the insurer to disclaim liability.

 We regard the following statement from Metropolitan Casualty Ins. Co. of New York v. Richardson, 81 F. Supp. 310 (S. D. Ill. 1948), as a proper standard for determining a breach of co-operation (p. 315):

"It is the duty of the insured to give a full, frank and complete statement of the cause, conditions and circumstances of the accident and the conduct of the parties at the time in order that the insurer may properly present its defense. One of the leading cases on this subject is United States Fidelity & Guaranty Co. v. Wyer, 60 F.2d 856, a decision of the Circuit Court of Appeals, Tenth Circuit. In reversing a judgment for plaintiff the Court there quoted with approval the language of Justice Cardozo in Coleman v. New Amsterdam Casualty Co., 247 N. Y. 271, 160 N. E. 367, 369, 72 A. L. R. 1443, as follows: 'Co-operation does not mean that the assured is to combine with the insurer to present a sham defense. Co-operation does mean that there shall be a fair and frank disclosure of information reasonably demanded by the insurer to enable it to determine whether there is a genuine defense.' "

██ Under this view we feel that a timely revelation of the truth might render an incipient breach immaterial (see General Accident, Fire and Life Assurance Corp. v. Rinnert, 170 F.2d 440 (CA 5 1948)), but we reject as obsolete and impracticable the concept that a breach of the co-operation clause must be asserted and determined on the basis of an actual showing of prejudice or detriment to the insurer. (For factually comparable cases so determined, see Allegretto v. Oregon Automobile Ins. Co., 140 Ore. 538, 13 P.2d 647 (1932); Valladao v. Fireman's Fund Indemnity Co., 13 Cal.2d 322, 89 P.2d 643 (1939).) We do not believe that the defendant's recanting and telling the truth in the instant case was, in any sense, timely, and conclude that his initial false statements constituted a breach of the co-operation clause.

██ We must now consider whether plaintiff waived the breach by defendant of the co-operation clause. The law is generally well settled that the failure of an insurer promptly to elect to disclaim liability,

50

upon discovering facts indicating a breach of the co-operation clause by the insured, constitutes a waiver by the insurer of any rights which might otherwise accrue to it as a result of the breach. Norwich Union Indemnity Co. v. Haas, 179 F.2d 827 (CA 7 1950); Searls v. Standard Accident Ins. Co., 316 Mass. 606, 56 N.E.2d 127 (1944); Daly v. Employers Liability Assur. Corp., 269 Mass. 1, 168 N. E. 111 (1929). To the same effect is the following language of our Supreme Court in Krutsinger v. Illinois Casualty Co., 10 Ill.2d 518, at p. 526:

"When an insurer wishes to assert its nonliability under the policy, it must notify the insured without delay. The reason is that '[t]he claim might be of such a character as that the amount of damages recovered in a lawsuit by the insured party would exceed the indemnity and subject the insured to considerable loss and damage, and therefore the insured should have a right to know with reasonable promptness the attitude of the indemnity company, so that he might be in a position to take such action as would not only protect the indemnity company, but save himself from loss and damages.' (Interstate Casualty Co. v. Wallins Creek Coal Co., 164 Ky. 778, 781, 176 S. W. 217, 219.)"

Plaintiff did not reserve its rights against defendant until almost one year and a half after the filing of the answer in the personal injury action although it had knowledge of the breach at that time. During this time defendant rested secure in the belief that full responsibility for his defense had passed to plaintiff. During this period, the attorneys hired and paid by plaintiff, although aware of a conflict of interest between plaintiff and defendant, continued to represent defendant in the personal injury action. Plaintiff's extended delay in informing defendant of its intention to deny liability clearly constituted a waiver of the breach.

51

There is a further ground for finding waiver in the instant case. As heretofore indicated, plaintiff's attorneys, while representing defendant in the tort action, became aware of a conflict of interest between their client, the defendant, and their employer, the plaintiff. Without disclosing this information or its significance to defendant, the attorneys assumed complete control of the defense. They proceeded to take their client's deposition for the admitted purpose of placing their employer in a position to disclaim liability under the policy.

It is the law of this State that an attorney is required to disclose to his client all facts and circumstances within his knowledge, which, in his honest judgment, might be likely to affect the performance of his duty for that client. Catherwood v. Morris, 360 Ill. 473, 481 (1935). A client may presume from an attorney's failure to disclose matters material to his employment that the attorney has no interest which will interfere with his devotion to the cause confided in him, or betray his judgment. Hunter v. Troup, 315 Ill. 293, 302 (1925). As a New York court has succinctly pointed out, an insurer's attorneys are bound by the same high standards which govern all attorneys, whether or not privately retained. In American Employers Ins. Co. v. Goble Aircraft Specialties, Inc., 205 Misc. 1066, 131 N.Y.S.2d 393 (1954), at pages 401–2 the court said:

"The attorney may not seek to reduce the company's loss by attempting to save a portion of the total indemnity in negotiations for the settlement of a negligence action, if by so doing he needlessly subjects the assured to judgment in excess of the policy limit. His duty to the assured is paramount. The Canons of Professional Ethics make it pellucid that there are not two standards, one applying to counsel privately retained by a client, and the other to counsel paid by an insur-

ance carrier. Canons 6, 45, Appendix, McKinney's Judiciary Law. If the interests of the carrier and the assured are or are likely to become diverse, he cannot represent both. 'Divided obligations in trust relations are obnoxious to the law, and in none more so than in that of attorney and client.' People v. People's Trust Co., 180 App. Div. 494, 167 N.Y.S. 767, 768."

Where an insurer's attorney has reason to believe that the discharge of his duties to his client, the insured, will conflict with his duties to his employer, the insurer, it becomes incumbent upon him to terminate his relationship with the client. Reynolds v. Maramorosch, 208 Misc. 626, 144 N.Y.S.2d 900 (1955); Helm v. Inter Insurance Exchange, 354 Mo. 935, 192 S.W.2d 417 (1946); Hammett v. McIntyre, 114 Cal.App.2d 148, 249 P.2d 885 (1952). It was the duty of plaintiff's attorneys upon learning of the possible conflict of interests between plaintiff and defendant, to immediately notify defendant of this fact. Their failure to take such action can be attributed only to their desire to strengthen plaintiff's position in preparation for the filing of the instant suit. It would be untenable under such circumstances to allow plaintiff to disclaim liability under the policy. We conclude, therefore, that the trial court erred in finding that plaintiff was not liable under the terms of the policy because of the breach of co-operation clause. The judgment of the trial court is reversed.

Judgment reversed.

SCHWARTZ, P. J. and McCORMICK, J., concur.