[Civ. No. 11079. Third Dist. Apr. 15, 1966.]

ROBERTA M. ISHMAEL, Plaintiff and Appellant, v.
ROBERT MILLINGTON, Defendant and Respondent.

James E. Green for Plaintiff and Appellant.

Rich, Fuidge, Dawson, Marsh, Tweedy & Morris and Richard H. Fuidge for Defendant and Respondent.

FRIEDMAN, J.—This is a legal malpractice action in which the plaintiff-client appeals from a summary judgment granted the defendant-attorney. The factual narrative will possess heightened significance against a backdrop of general doctrine:

■ Actionable legal malpractice is compounded of the same basic elements as other kinds of actionable negligence: duty, breach of duty, proximate cause, damage. (*Hege* v. *Worthington, Park & Worthington,* 209 Cal.App.2d 670, 677 [26 Cal.Rptr. 132]; see *Modica* v. *Crist,* 129 Cal.App.2d 144, 146-148 [276 P.2d 614]; 1 Witkin, Cal. Procedure (1954) 73-74.) ■ Touching the first element, duty, the general rule is that "the attorney, by accepting employment to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. (*Estate of Kruger,* 130 Cal. 621, 626 [63 P. 31]; *Moser* v. *Western Harness Racing Assn.,* 89 Cal.App.2d 1, 7 [200 P.2d 7]; *Armstrong* v. *Adams,* 102 Cal.App. 677, 684 [283 P. 871]; see Wade, *The Attorney's Liability for Negligence* (1959) 12 Vanderbilt L.Rev. 755, 762-765; 5 Am. Jur. 336.)" (*Lucas* v. *Hamm,* 56 Cal.2d 583, 591 [15 Cal.Rptr. 821, 364 P.2d 685]; see also Leavitt, *The Attorney as Defendant,* 13 Hastings L.J. 1, 23; Note, 45 A.L.R.2d 5-58.)

Quite without reference to the four basic elements of the traditional negligence analysis, a 1931 California appellate decision announced the following statement of essentials in the pleading and proof of legal malpractice: " 'First, that there existed the relationship of attorney and client; second, that in connection with such relationship advice was given; third, that he [the client] relied upon such advice and as a result thereof did things that he would not otherwise have done; fourth, that as a direct and proximate result of such advice and the doing of such acts, he suffered loss and was damaged thereby.' " (*McGregor* v. *Wright,* 117 Cal.App. 186, 193 [3 P.2d 624].) No specific ancestry was cited for the quoted statement. It seems to have been coined in the *McGregor* case. Relative to the element of reliance, the statement was dictum. A later dictum in *Modica* v. *Crist, supra,* 129 Cal.App.2d at page 146, quoted the *McGregor* dictum with approval. Although embracing the *McGregor* formulation of specific malpractice essentials, the *Modica* case held that in legal malpractice suits negligence may be pleaded in general terms.

In this case the defense is that the client sought no advice from the attorney and was given none; by the client's express admission, she did not rely on the attorney, thus, that her alleged damage was not proximately caused by the attorney's cause of action.

The facts are presented by summary judgment affidavits, which include extracts from depositions. There is no significant conflict in the evidence. Roberta Ishmael, the plaintiff, was formerly married to Earl F. Anders. The couple had three children. They lived in Gridley, where Mr. Anders was a partner in a family trucking business. Domestic difficulties resulted in a separation, and Mrs. Anders moved to Sacramento where she secured employment. She and her husband agreed upon a divorce and property settlement. She knew that she was entitled to one-half the marital property.

Mr. Anders called upon defendant Robert Millington, a Gridley attorney who had for some time represented him and his trucking firm. Mr. Millington advised Anders that if he could establish adulterous conduct by Mrs. Anders, he might be awarded more than one-half the community property. For one reason or another there was a decision that the wife rather than the husband would apply for divorce. At Anders' request Mr. Millington agreed to act as the wife's attorney, to prepare the necessary papers and to file a divorce action for her. He drew up a complaint and a property settlement agreement and handed these documents to Mr. Anders, who took them to Sacramento and had his wife sign them. She knew that Mr. Millington had represented her husband in the past. Faulty recall prevents ascertainment whether Mrs. Anders ever met personally with the attorney before the papers were drawn. She did not discuss the property settlement agreement with the attorney before she signed it. Mr. Millington believed the divorce and property settlement arrangements were "cut and dried" between the husband and wife; he "assumed that she knew what she was doing;" he believed that she was actually getting half the property but made no effort to confirm that belief.

In her deposition the former Mrs. Anders testified that in signing the complaint and property settlement agreement she relied solely on her husband and did not rely on the attorney. Later, when so instructed, she traveled to the courthouse at Oroville, where she and her corroborating witness met Mr. Millington. He escorted her through a routine ex parte hearing which resulted in an interlocutory divorce decree and judicial approval of the property settlement.

According to her complaint, the former Mrs. Anders discovered that in return for a settlement of $8,807 she had surrendered her right to community assets totaling $82,500. Ascribing her loss to the attorney's negligent failure to make inquiries as to the true worth of the community property, she seeks damages equivalent to the difference between what she received and one-half the asserted value of the community.

Summary judgment proceedings are not available where there are issues of fact to be tried; the question posed to the trial court and to this reviewing court is whether the pleading and affidavits disclose triable issues of fact. (*Simmons* v. *Civil Service Emp. Ins. Co.*, 57 Cal.2d 381, 384 [19 Cal.Rptr. 662, 369 P.2d 262].) There being practically no conflict in the facts, affirmance or reversal turns on a decision whether the trial court undertook to decide issues of fact reserved for jury determination.

In any negligence action the existence of a duty of care owed by the defendant to the plaintiff is a question of law for the court. (*Amaya* v. *Home Ice etc. Co.*, 59 Cal.2d 295, 307-308 [29 Cal.Rptr. 33, 379 P.2d 513].) If a duty exists, the complementary degree of care exacted of the defendant—usually that of a reasonable man of ordinary prudence in a like situation—is also declared by law. (Prosser on Torts (3d ed.) pp. 153, 207; Rest. 2d Torts, § 328B.) Breach of duty is usually a fact issue for the jury; if the circumstances permit a reasonable doubt whether the defendant's conduct violates the boundaries of ordinary care, the doubt must be resolved as an issue of fact by the jury rather than of law by the court. (*Warner* v. *Santa Catalina Island Co.*, 44 Cal.2d 310, 318 [282 P.2d 12]; *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 217 [157 P.2d 372, 158 A.L.R. 782].)[1] Given a breach of duty by the defendant, the decision whether that breach caused the damage (that is, causation in fact) is again

[1]An early California decision states that when the facts of a legal malpractice action are ascertained, the question of negligence is one of law for the court. (*Gambert* v. *Hart*, 44 Cal. 542, 552.) The *Gambert* statement is discussed with obvious misgivings in *Floro* v. *Lawton*, 187 Cal.App.2d 657, 674-676 [10 Cal.Rptr. 98].) The notion of attorneys' negligence as an issue of law is contrary to the weight of authority in other states. (See Wade, *The Attorney's Liability for Negligence* (reprinted in Roady and Andersen, *Professional Negligence*) 217, 228.) It is also contrary to the modern California concept that the legal malpractice suit is but one variety of negligence action, governed by the general doctrines of pleading and proof prevailing in negligence actions. (*Hege* v. *Worthington, Park & Worthington, supra,* 209 Cal.App.2d at p. 677; *Modica* v. *Crist, supra,* 129 Cal.App.2d at p. 146.)

within the jury's domain; but where reasonable men will not dispute the absence of causality, the court may take the decision from the jury and treat the question as one of law. (*Basin Oil Co.* v. *Baash-Ross Tool Co.* 125 Cal.App.2d 578, 603 [271 P.2d 122]; see 2 Witkin, Summary of Cal. Law (1960) 1483-1484; Rest. 2d Torts, § 434; Prosser, *Proximate Cause in California*, 38 Cal.L.Rev. 369, 375-383, 420-421.)

■ By the very act of undertaking to represent Mrs. Anders in an uncontested divorce suit, Mr. Millington assumed a duty of care toward her, whatever its degree. Described in terms traditionally applicable to the attorney-client relationship, the degree of care exacted by that duty was that of a figurative lawyer of ordinary skill and capacity in the performance of like tasks. (*Lucas* v. *Hamm, supra*, 56 Cal.2d at p. 591.)

The degree of care is related to the specific situation in which the defendant found himself. The standard is that of ordinary care under the circumstances of the particular case. (*Cucinella* v. *Weston Biscuit Co.*, 42 Cal.2d 71, 80 [265 P.2d 513]; see cases cited 2 Witkin, Summary of Cal. Law (1960) 1411; Rest. 2d Torts, § 283.) ■ A lawyer owes undivided loyalty to his client. Minimum standards of professional ethics usually permit him to represent dual interests where full consent and full disclosure occur.[2] The loyalty he owes one client cannot consume that owed to the other. Most descriptions of professional conduct prohibit his undertaking to represent conflicting interests at all; or demand that he terminate the three-way relationship when adversity of interest appears.[3] Occasional statements sanction informed

[2]See *Grove* v. *Grove Valve & Regulator Co.*, 213 Cal.App.2d 646, 652-653 [29 Cal.Rptr. 150]; *Lessing* v. *Gibbons*, 6 Cal.App.2d 598, 605 [45 P.2d 258]. The Rules of Professional Conduct of the State Bar, approved by the Supreme Court pursuant to Business and Professions Code section 6076, provide:

"Rule 6. A member of the State Bar shall not accept professional employment without first disclosing his relation, if any, with the adverse party, and his interest, if any, in the subject matter of the employment."

"Rule 7. A member of the State Bar shall not represent conflicting interests, except with the consent of all parties concerned."

[3]See Cheatham, Cases and Materials on Legal Profession, p. 151 et seq. *Anderson* v. *Eaton*, 211 Cal. 113, 116 [293 P. 788], states: ". . . [A]n attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests. Nor does it matter that the intention and motives of the attorney are honest." While rule 6 of the California Rules of Professional Conduct (fn. 1, *supra*) seemingly permits representation of adverse interests after disclosure of the relation and with the clients' consent, Canon 6 of the American Bar Association demands "full disclosure of the facts." The "facts" should include a revelation of the detriment to which the dual

representation of divergent interests in "exceptional" situations. Even those statements demand complete disclosure of all facts and circumstances which, in the attorney's honest judgment, may influence his client's choice, holding the attorney civilly liable for loss caused by lack of disclosure. (*Allstate Ins. Co.* v. *Keller, supra,* 149 N.E.2d at p. 486; *Crum* v. *Anchor Cas. Co.,* 264 Minn. 378 [119 N.W.2d 703]; *Smallwood* v. *Overseas Storage Co.,* 263 App.Div. 609 [33 N.Y.2d 876, 880-881]; see additional cases cited 7 C.J.S., Attorney and Client, §151, note 50.)

Divorces are frequently uncontested; the parties may make their financial arrangements peaceably and honestly; vestigial chivalry may impel them to display the wife as the injured plaintiff; the husband may then seek out and pay an attorney to escort the wife through the formalities of adjudication. We describe these facts of life without necessarily approving them. Even in that situation the attorney's professional obligations do not permit his descent to the level of a scrivener. The edge of danger gleams if the attorney has previously represented the husband. A husband and wife at the brink of division of their marital assets have an obvious divergence of interests. Representing the wife in an arm's length divorce, an attorney of ordinary professional skill would demand some verification of the husband's financial statement; or, at the minimum, inform the wife that the husband's statement was unconfirmed, that wives may be cheated, that prudence called for investigation and verification. Deprived of such disclosure, the wife cannot make a free and intelligent choice. Representing both spouses in an uncontested divorce situation (whatever the ethical implications), the attorney's professional obligations demand no less. He may not set a shallow limit on the depth to which he will represent the wife.[4]

representation exposes the client and the possible need of representation by independent counsel. (*Allstate Ins. Co.* v. *Keller,* 17 Ill. App.2d 44 [149 N.E.2d 482, 486, 70 A.L.R.2d 1190].) Without reference to the minimum standards fixed by professional canons, California courts have repeatedly held that counsel should terminate a relationship when the discharge of duty to one client conflicts with duty to another. (*Dettamanti* v. *Lompoc Union School Dist.,* 143 Cal.App.2d 715, 723 [300 P.2d 78]; *Hammett* v. *McIntyre,* 114 Cal.App.2d 148, 153-154 [249 P.2d 885]; *McClure* v. *Donovan,* 82 Cal.App.2d 664, 666 [186 P.2d 718]; *Pennix* v. *Winton,* 61 Cal.App.2d 761, 773 [143 P.2d 940, 145 P.2d 561].)

[4] The Committee on Ethics of the Los Angeles Bar Association has condemned dual representation in divorce suits even with parties' consent, basing its opinion on American Bar Association Canon 6 rather than the California rules. (Opinion No. 207, July 10, 1953, 29 L.A. Bar Bulletin 137.) An aggravated instance of dual representation in a divorce suit

The general standard of professional care described in *Lucas* v. *Hamm, supra,* is appropriate to the garden variety situation, where the attorney represents only one of several parties or interests. It falls short of adequate description where the attorney's professional relationship extends to two clients with divergent or conflicting interests in the same subject matter. A more specific statement of the same rule is needed to guide the fact trier to the law's demands when the attorney attempts dual representation. In short, an attorney representing two parties with divergent interests must disclose all facts and circumstances which, in the judgment of a lawyer of ordinary skill and capacity, are necessary to enable his client to make free and intelligent decisions regarding the subject matter of the representation.[5]

 In view of the degree of care imposed by law on an attorney in defendant's position, a fact trier might reasonably find him negligent in failing to disclose to plaintiff the limited representation she was receiving and in failing to point to the possibility of independent legal advice. The question of breach

appears in *In re Rubin,* 7 N.J. 507 [81 A.2d 776], and *Staedler* v. *Staedler,* 6 N.J. 380 [78 A.2d 896, 28 A.L.R.2d 1291]; see Drinker, *Problems of Professional Ethics in Matrimonial Litigation,* 66 Harv. L.R. 443-464.) Specifically discussing dual representation in uncontested divorce actions, Professor Henry S. Drinker states:

''The American Bar Association, the Michigan Committee, and the two New York Committees have held that the lawyer for one spouse should not recommend a lawyer for the other, or prepare the pleadings or papers or testimony for the other or act for or give legal advice to the other in any respect, and that disclosure to the court, even before the decree, would not make this proper.

''. . . . . . . . . . . .

''Apparently the decisions which would insulate the parties and their respective lawyers completely from one another are based on the fiction that the interests of parties to a divorce suit are necessarily and always antagonistic to one another and on the further assumption that this was necessary to secure proper protection for the interest of the state in preserving their marital status. It would, however seem very questionable as to whether such protection is needed in a bona fide case, where it is clear that the wife honestly wants the divorce and is not coerced into it by an obviously dominant husband, where the allowance proposed by him is reasonable, *and where the lawyer suggested to her by the husband or by his lawyer has not theretofore represented the husband.* It is manifest that such suggestion is but natural and occurs all the time in uncontested cases. To condemn it where it is openly disclosed would seem both futile and unnecessary.'' (Drinker, *Legal Ethics,* pp. 128-129.) (Italics added.)

[5]In *Anderson* v. *Eaton, supra,* 211 Cal. at page 116, the level of disclosure is fixed as that necessary to permit the client's ''free and intelligent consent.'' In *Allstate Ins. Co.* v. *Keller, supra,* disclosure is demanded of ''all facts and circumstances within [the attorney's] knowledge, which, in his honest judgment, might be likely to affect the performance of his duty for that client.'' (149 N.E.2d at p. 486.)

was thus a triable issue which could not be resolved on a summary judgment motion. We pass to the causation factor.

As we noted earlier, the general doctrine of negligence law establishes causality as a fact issue for the jury except in those cases where reasonable men cannot differ. At this point defendant adverts to the rule requiring reliance upon the attorney's advice, as stated in *McGregor* v. *Wright, supra,* and *Modica* v. *Crist, supra.* Although by way of dictum, these cases seemingly announce an unyielding rule of causality, requiring not only that the attorney gave advice but also that the client relied on that advice. The *McGregor-Modica* formulation implies that the attorney's conduct does not as a matter of law cause the client's harm where there is no reliance.

To pose lack of reliance as a fixed doctrinal demand invades the jury's province as the trier of causation in fact; alternatively, such a demand rests upon the inacceptable proposition that all reasonable men will agree in rejecting the attorney's conduct (including his inaction and silence) as a cause of damage where the client relies on other sources of information. The *McGregor-Modica* demand for reliance cannot be regarded as a fixed condition of recovery or as authority for a finding of noncausality as a matter of law.

Legal malpractice may consist of a negligent failure to act. (*Feldesman* v. *McGovern,* 44 Cal.App.2d 566, 568 [112 P.2d 645] ; see *Gambert* v. *Hart, supra,* 44 Cal. at p. 552; *Hege* v. *Worthington, Park & Worthington, supra,* 209 Cal. App.2d at pp. 676-678 ; *Pete* v. *Henderson,* 124 Cal.App.2d 487-489 [269 P.2d 78].) The attorney's negligence, whether consisting of active conduct or a failure to act, need not be the sole cause of the client's loss. (*Modica* v. *Crist, supra,* 129 Cal.App.2d at p. 146; see 2 Witkin, Summary of Cal. Law (1960) p. 1485; Prosser, *Proximate Cause in California,* 38 Cal.L.Rev. 369, 378.) Here the attorney is charged not with erroneous advice, but with failure to advise, failure to investigate, failure to disclose. The wife's reliance on her husband's alleged misrepresentations is not at all inconsistent with the claim that her loss was the result of the attorney's negligent failure. A jury might find that the husband's misrepresentations were a realizable likelihood which made the attorney's inaction negligent, thus forming a concurrent (and not superseding) cause of harm. (*Richardson* v. *Ham,* 44 Cal. 2d 772, 777 [285 P.2d 269] ; *Mosley* v. *Arden Farms Co., supra,* 26 Cal.2d at pp. 218-219 ; Rest. 2d Torts, §449.) Causa-

tion was a jury question which could not be resolved as a matter of law.

Contributory negligence on plaintiff's part was specially pleaded and, if established, would bar malpractice recovery. (*Theobald* v. *Byers*, 193 Cal.App.2d 147, 150 [13 Cal.Rptr. 864, 87 A.L.R.2d 986]; Note, 45 A.L.R.2d 5, 17-18.)

Plaintiff, as she testified, relied on her husband's list of assets; apparently did not trouble to investigate or even to inquire whether she was getting her share of property; was seemingly content to let her husband take charge; accepted his attorney for the limited purpose of piloting her through the divorce formalities. A court, however, cannot say that reasonable jurors would inevitably characterize her conduct as contributory negligence. That issue was a triable issue of fact.

Thus, notwithstanding the lack of conflict in the evidence, the summary judgment rests on the determination of issues reserved for decision by a fact trier and which could not be resolved as a matter of law. Since triable issues of fact existed, the motion should have been denied.

Judgment reversed

Pierce, P. J., and Regan, J., concurred.