Gibraltar Insurance Company, an Illinois Corporation, Plaintiff-Appellant, v. Michael Varkalis, Administrator of the Estate of Veronica Varkalis, Deceased, and Kenneth Robinson, Defendants-Appellees.

Gen. No. 52,522.

First District, Second Division.

November 4, 1969.

BURKE, J., dissenting.

John Narusis, Jr., of Lazzara, Narusis & Stimson, of Chicago (John Narusis, Jr., of counsel), for appellant.

Griffin & Gallagher, of Chicago (Daniel A. Gallagher, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court as modified on rehearing.

This appeal was originally taken from an order entered in the trial court dismissing the complaint filed by the plaintiff, Gibraltar Insurance Company, praying for a declaratory judgment to adjudicate the rights of the parties under an automobile policy which had been issued by plaintiff. Defendants Michael Varkalis, administrator of the estate of Veronica Varkalis, and Kenneth Robinson filed a motion in the trial court to dismiss the complaint. The trial court sustained the motion, and from that ruling this appeal is taken. The question presented to this court is whether the action of the trial court was proper.

On October 28, 1966, plaintiff filed a complaint alleging, among other things, that the action was brought for a declaratory judgment "to declare and determine the rights of the parties hereto"; that the plaintiff was a licensed insurance company engaged in that business; that

on or about December 17, 1960, plaintiff issued to Kenneth Robinson a policy effective December 15, 1960, and "that by the terms of said policy, in consideration of the payment of the premium and in reliance upon statements and declarations and applications for insurance, but subject to the limits of liability, exclusions and conditions set forth in said policy, the plaintiff undertook to insure the defendant, Kenneth Robinson, against loss arising out of the defendant's legal liability to pay damage for injuries to person or damages to property of any person caused by the automobile described in the aforementioned policy of insurance; and by the terms of which plaintiff agreed to defend at the Company's expense, any suit for injuries or property damage brought against said defendant, Kenneth Robinson, arising out of the operation of the vehicle covered by the policy described herein."

The complaint further alleged that on May 12, 1961, Kenneth Robinson, while operating the automobile so insured, in which Veronica Varkalis was a passenger, struck Veronica Varkalis on the head with a bottle, pushed her from the automobile, and repeatedly ran over her, causing her death. It was alleged that by the terms of said policy, assault and battery were to be deemed an accident unless committed by or at the direction of the insured; that the plaintiff denied that it had any duty or obligation to defend Kenneth Robinson, or that in the event a judgment was entered against him it had any obligation to pay defendant Varkalis under the provisions of plaintiff's policy of insurance, for the reason that the policy does not cover assault and battery done at the direction of the insured.

It was further alleged that a cause of action had arisen under the Declaratory Judgments Act (Ill Rev Stats 1965, c 110, § 57.1) which controversy is justiciable within the provision of the statute; that plaintiff therefore prays that the court find and declare that plain-

tiff owes no duty to defend Kenneth Robinson or to pay any judgment entered in favor of Michael Varkalis, administrator, against Kenneth Robinson.

On December 5, 1966, defendant filed a motion to dismiss the complaint for declaratory judgment. On May 26, 1967, the court entered an order giving leave to the plaintiff to file its first amended complaint, and allowing the motion to dismiss the original complaint filed by defendant to stand as a motion to dismiss the first amended complaint.

On May 26, 1967, the plaintiff filed its first amended complaint for declaratory judgment and that complaint repeats in substance the allegations with reference to the death of Veronica Varkalis and further alleges that by the terms of its exclusion clause it does not apply to bodily injuries caused intentionally by or at the direction of the insured. It is alleged that a suit was filed by Michael Varkalis as Administrator of the Estate of Veronica Varkalis v. Kenneth Robinson, a copy of which was attached as Exhibit B. It is further stated that "Gilbraltar Mutual Casualty Company was called upon to defend and did provide a defense for said Kenneth Robinson as reflected in court order dated May 15, 1967, marked Exhibit C, and court order dated May 15, 1967 and marked Exhibit D, and Exhibit D–2."

The complaint further alleged that "on May 15, 1967 a bench trial was held after waiver of jury and Judge Butler found for the plaintiff and against the defendant, Kenneth Robinson, in the amount of $30,000.00 less $4,500.00 or $25,500.00 as reflected in court order dated May 15, 1967 attached as Exhibit E"; that the plaintiff "denies that it has any obligation to pay under the provisions of said policy on the behalf of Kenneth Robinson any judgment rendered against him in the case of 'Michael Varkalis, Administrator of the Estate of Veronica Varkalis, Deceased v. Kenneth Robinson', . . . for the reason that said policy of insurance does not

133

cover bodily injury or death caused intentionally by or at the direction of the insured; that said Kenneth Robinson was indicted for unlawfully, wilfully, feloniously and of his malice aforethought, killing and murdering said Veronica Varkalis, pleaded guilty and was sentenced as reflected in attached Exhibit F."

The prayer for relief is the same as that in the original complaint, asking that the court find the plaintiff owes no duty to defendant Kenneth Robinson, or to pay any judgments entered in favor of Michael Varkalis, administrator, against Kenneth Robinson, and that the court "find and declare that such other and further rights in the premises as are necessary and proper for the full determination of the controversy and as justice may require."

The plaintiff does not allege that at the time it provided defense for Kenneth Robinson there was any reservation of rights served upon Robinson. The original motion to dismiss the complaint filed on December 5, 1966, which motion the court ordered to be considered with reference to the amended complaint, sets out that from the record of the court it appears that "plaintiff had further notice of such a claim on or before March 9, 1964, when it caused its attorney to file an appearance for Kenneth Robinson, . . . and thereby undertook to defend said claim of said Administrator against plaintiff's insured, Kenneth Robinson"; that on April 13, 1964, the attorney for plaintiff filed a motion to dismiss the cause, the motion was denied on May 11, 1964, and the answer filed by plaintiff's attorney was ordered to stand as the answer to the complaint.

It is also alleged that plaintiff's attorney participated in a pretrial conference on June 10, 1965, and at other times. It is stated that "by reason of said undertakings and said participation in said cause . . . , plaintiff is estopped from now asserting non-liability

upon its policy and plaintiff has waived any right to assert such non-liability."

On an affidavit attached to the motion to dismiss, Joseph P. Griffin states that he is a partner in the law firm of Griffin and Gallagher; that the law firm is attorney of record for Michael Varkalis; that on May 31, 1961, the affiant served upon Robinson a notice of attorney's lien, and that on June 1, 1961, a letter was sent to Robinson informing him that Griffin and Gallagher were the legal representative of the estate of Veronica Varkalis, and requesting that Robinson forward the letter and lien to his insurance company.

On July 13, 1961, the affiant received a telephone call from a Mr. Casati who identified himself as an adjuster for Gibraltar Insurance Company, and stated that "his company was considering the proposition that it had no liability to defend the claim of Veronica Varkalis because it had evidence to the effect that the injuries inflicted upon her by Robinson were inflicted intentionally upon her."

It is stated that on March 29, 1962, Griffin and Gallagher filed suit in the Circuit Court of Cook County on the said claim and that summons was served upon Robinson on April 3, 1962; that on February 13, 1964, a letter was written by the firm of Griffin and Gallagher to Gibraltar Mutual Casualty Company, advising that no appearance had been filed in the lawsuit on behalf of Kenneth Robinson, a photocopy of which letter was attached. It is stated that on March 19, 1964, "by the law firm of Anthony R. Lazzara, the appearance in said cause . . . of defendant, Kenneth Robinson was filed; that on the same date, March 19, 1964, said law firm filed . . . the Answer of said defendant, Kenneth Robinson; that on April 13, 1964 said law firm, on behalf of said defendant, Kenneth Robinson, filed a Motion to Strike the Complaint in the said cause . . . ;

135

that said law firm represented defendant Kenneth Robinson in argument on said Motion in court on May 11, 1964 when said motion was denied. That a representative of the law firm of Anthony R. Lazzara attended a number of pre-trial conferences held in such case before Judges Benjamin Wham, Frank Bicek, and Robert McAuliffe in this court."

The plaintiff here argues that the action was based on a written contract—the automobile policy issued to Kenneth Robinson—and that the ten-year statute is therefore applicable; that since the ten-year statute is relevant, time had not expired within which to file a declaratory judgment suit, and that the trial court therefore erroneously dismissed the suit. Plaintiff further argues that the cause of action accrued on May 15, 1967, the date on which judgment was entered in the trial court in favor of Michael Varkalis against Kenneth Robinson. Therefore, according to plaintiff's theory, if we should apply the five-year statute the plaintiff would have until May 15, 1972, to file suit for declaratory judgment.

■ The answer to plaintiff's argument is to be found in its own complaint filed seven months before the May 15 judgment was entered. In that complaint it was alleged that plaintiff had no duty to Kenneth Robinson or to the administrator who might obtain a judgment against Robinson. In other words, plaintiff recognized that a controversy already existed; namely, the one which arose on May 12, 1961, when Veronica Varkalis was killed, and this recognition is apparent from its very denial of a duty to pay. The cause of action accrued from the moment of death.

■ ■ The Declaratory Judgments Act is statutory and provides for a remedy "unknown to the common law." State Farm Mut. Automobile Ins. Co. v. Morris, 29 Ill App 2d 451, 459, 173 NE2d 590. The purpose of the act is not

to replace, but to add to existing remedies. It is cumulative with other methods of judicial determination.

It has been held that where an action is statutory it is "a civil action not otherwise provided for" within the meaning of section 16 (or its predecessor, section 15) of Chapter 83. Blakeslee's Storage Warehouses, Inc. v. City of Chicago, 369 Ill 480, 17 NE2d 1; Lyons v. County of Morgan, 313 Ill App 296, 40 NE2d 103. In Wakat v. Harlib, 253 F2d 59 (7th Cir), the plaintiff had sued police for violations of the Federal Civil Rights Act. Defendants urged that the plaintiff's cause of action was barred by the Illinois Limitations Act. Under the Illinois act the plaintiff had had two years within which to bring suit for [in the words of the statute] "Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, . . ." In that case the plaintiff argued that the action was within another section of the Limitations Act which provided a five-year limitation for specified actions, "and all civil actions not otherwise provided for." The court held that the action relied on by plaintiff was a statutory one, and said at page 63: "A statutory right of action is a 'civil action not otherwise provided for' within the meaning of" the five-year statute of limitations.

■ In the case before us we find that the action brought was a statutory one and was within the phrase "civil action not otherwise provided for" which statement appears in the five-year statute of limitations. That statute being controlling, and with more than five years having elapsed since the cause of action had accrued, the trial court correctly dismissed the action.

If an action is properly brought under the Declaratory Judgments Act the courts will view it as a statutory action and apply the rules accordingly. In Crerar Clinch Coal Co. v. Board of Education, 13 Ill App2d 208, 141 NE2d 393, the court said at page 218:

". . . construction of a contract is a proper type of action under the Declaratory Judgments Act, that such an action is statutory and sui generis, and that the action retains its nature even though the plaintiff requests, and the court grants, an accounting, money damages or other incidental relief."

Plaintiff's argument is that since a declaratory judgment action does not itself grant substantive relief and is merely a procedural mechanism through which to obtain declarations by the court as to substantive rights, it should not be accorded the status of a "civil action not otherwise provided for." However, we cannot overlook the fact that if it were not for the declaratory form of relief provided by statute, litigants would not be able to obtain declarations of rights that are now available under the statutory procedure. Therefore, it is necessary to look to the statute to determine the time within which such suits must be brought.

In his memorandum and argument in the trial court the defendant urged that laches, estoppel and waiver barred the declaratory judgment proceedings. In an affidavit attached to defendant's motion to dismiss plaintiff's declaratory judgment suit, the defendant alleged that on July 13, 1961, the adjuster for Gibraltar Mutual Casualty Company called defendant's attorney and stated that his company *was considering the proposition* that Gibraltar was under no liability to defend the claim since it had evidence that the injuries upon the deceased were inflicted intentionally. On March 29, 1962, the defendant in the instant case (Michael Varkalis) filed suit against Kenneth Robinson, and on February 13, 1964, attorneys for said defendant wrote to Gibraltar, advising that no appearance had been filed in the suit against Robinson, the company's insured. On March 19, 1964, an appearance was filed by the law firm of Lazzara, Narusis & Stimson. At that time Gi-

braltar did not notify the insured that it was defending under a reservation of rights.

On April 13, 1964, a motion to strike the complaint was argued by the Gibraltar attorneys on behalf of Robinson, and on May 11, 1964, a motion to dismiss the original complaint was also argued. In its petition for rehearing, Gibraltar's president set out an affidavit which stated that the defense of the lawsuit against Robinson was under reservation of rights and that ". . . Robinson was notified on or about July 13, 1965 that a defense would be provided, but Gibraltar would not extend coverage under the policy via verdict or judgment, because of the wilful characteristics of his conduct on the date of the accident May 13, 1961." In its petition for rehearing Gibraltar enclosed a copy of that letter; however, on March 19, 1964, when Gibraltar's attorneys appeared in the case for Robinson, there was nothing in the record which could be construed as a reservation of rights.

It is worthwhile to again check the chronology of the case:

March 19, 1962, suit against Robinson filed.

April 3, 1962, summons served on Robinson.

February 13, 1964, letter from Varkalis attorneys to Robinson advising no appearance had been filed. March 19, 1964, appearance filed for Robinson by Gibraltar's attorneys.

March 19, 1964, Robinson's answer filed by same attorneys.

March 13, 1964, motion to strike complaint made by same attorneys.

May 11, 1964, motion to dismiss suit argued and denied by court.

139

The letter relied on by Gibraltar as making a reservation of rights was written on July 13, 1965. On May 15, 1967, in the case of Varkalis v. Robinson, an order was entered by Judge Butler setting out that after trial the court found the issues for plaintiff Varkalis and against Robinson, assessing the damages in the sum of $30,000, from which judgment the court entered a remittitur of $4,500. On the same day Judge Butler also entered an order permitting Lazzara, Narusis & Stimson to withdraw as attorneys for Robinson, and further providing that ". . . in the best interest of justice that the Court appoint an attorney to represent Kenneth Robinson during the course of the trial . . . and that said attorney should be paid by the Gibraltar Casualty Insurance Company." The court then appointed A. G. Scheele as attorney for Robinson, and further ordered that Gibraltar compensate Scheele for services rendered. Much of this appears in the amended complaint of Gibraltar in the case before us.

We must now consider the rule governing the question as to whether or not Gibraltar had waived its right to assert in a declaratory judgment action that it owed no liability to Robinson. In Apex Mut. Ins. Co. v. Christner, 99 Ill App2d 153, 240 NE2d 742, the insurance company had filed a suit to obtain a declaratory judgment that it had no duty to defend or pay judgment against the insured on the ground that the insured had breached the cooperation clause of the insurance policy, and that Apex had not waived the breach. In its brief the insured admitted it had breached the clause, but argued that Apex had waived the breach. The Appellate Court held that service upon the defendant in the declaratory judgment action preserved for the plaintiff those defenses enumerated in its complaint for declaratory relief "even though the insurer, without objection by the insured, continued meanwhile to represent its insured in the injury action." In other

140

words, the majority opinion treated the service upon the insured as an effectual reservation of rights on the part of Apex.

In that case discovery depositions were taken from the insured on April 18, 1963. On September 18, the insured signed a written statement that her April deposition contained lies and that she was in fact solely liable for the accident which was the subject of the suit against her. A hearing was set for December 17, 1963, on the plaintiff's motion for summary judgment. On December 11, 1963, Apex filed a declaratory judgment suit on the ground that the insured's breach of September 18 released the insurance company from the obligation to defend her or to pay any judgment against her. The insured was served in the declaratory judgment action on December 15, 1963.

In Apex, the court stated at page 161:

> "It is well settled that assumption of the insured's defense constitutes a waiver by the insurer of all questions of policy coverage. Bourne v. Seal, 53 Ill App2d 155, 203 NE2d 12; American Cas. Co. of Reading, Pa. v. Shely, 314 Ky 80, 234 SW2d 303 (1950); see De Hart v. Illinois Cas. Co., 116 F2d 685, 688. If, therefore, in spite of its doubts as to coverage, the insurer elects to take over the insured's defense, it will afterwards be estopped from denying its own liability under the policy."

At page 162 the court continued:

> "Sims v. Illinois Nat. Cas. Co. of Springfield, 43 Ill App2d 184, 199, 193 NE2d 123, cited with approval in Lincoln Cas. Co. v. Vic & Mario's, Inc., 62 Ill App2d 262, 267, 210 NE2d 329, discusses the insurer's options in such a predicament:
>
> " 'However, all authorities agree that quite often an insurer is faced with a dilemma as to whether

141

to defend or to refuse to defend. In cases of doubt the answer is simple. (1) Seek a declaratory judgment as to its obligations and rights or (2) defend under a reservation of rights.' "

And at 164 the court stated:

"An insurer will not be estopped from asserting a breach of the cooperation clause by its insured if it repudiates liability within a reasonable time after becoming aware of the insured's failure to cooperate. Krutsinger v. Illinois Cas. Co., 10 Ill2d 518, 526, 139 NE2d 767; 70 ALR2d 1199. See also Allstate Ins. Co. v. Keller, 17 Ill App2d 44, 50, 149 NE2d 482, to the same effect."

The court held that the filing of the judgment was sufficiently prompt after the time the insurance company became aware of its right to disclaim liability to comply with the rule, since less than two months had elapsed between the time the insurer learned of the breach and the time of filing the declaratory judgment suit. A dissent was filed in that case which considered that even treating the filing of the action as a formal disclaimer, it came too late to be effective.

In Country Mut. Ins. Co. v. Murray, 97 Ill App2d 61, 239 NE2d 498, the insurer had refused to defend a personal injury suit against the defendant on the ground that defendant was not covered as an insured within the relevant policy. The insurer argued that by refusing to defend the suit, and by filing its own declaratory judgment action which contested the existence of coverage, it had preserved its right to assert noncoverage. The court pointed out that it must review the content of the complaint, stating at page 71:

". . . and, if taken at face value, it is found to allege a cause of action which the policy is designed to cover, the company is then compelled to

defend its ·insured, or, . . . seek a declaratory judgment as to its obligations and rights *or* defend under a reservation of rights."

The court further stated, at page 73:

"In a case in which the policy is designed to cover the type of claim involved, wherein an insurer is presented with a claim that may or may not be covered by the policy, if the carrier refuses to provide its insured an unrestricted defense, yet desires to ultimately urge exclusionary coverage defenses, it must;

"(1) *Secure* a declaratory judgment of its rights and obligations, while defending its potential insured on a reservation of rights, or

"(2) Defend its potential insured on a reservation of rights and adjudicate its coverage in a supplemental suit. If it elects to defend under a reservation of rights, it must continue such defense until there is a final determination that the claim is not covered by the policy. If and when that becomes certain the insurer may turn back the defense."

In Allstate Ins. Co. v. Keller, 17 Ill App2d 44, 51, 149 NE2d 482, the court pointed out that plaintiff's reservation of rights did not come until almost a year and a half after it knew of the alleged breach, and that the "extended delay in informing defendant of its intention to deny liability clearly constituted a waiver of the breach." In Krutsinger v. Illinois Cas. Co., 10 Ill2d 518, 526, 139 NE2d 767, the court stated: "When an insurer wishes to assert its nonliability under the policy, it must notify the insured without delay."

■ In the case before us the letter in which Gibraltar made a reservation of rights was dated July 13, 1965. We point out that on March 19, 1964, Gibraltar's attorneys had filed their appearance in the

suit and continued in the suit from then on. Under the cases cited, the reservation of rights was filed too late and the extended delay in filing such a reservation constitutes a waiver of the breach. If we consider the declaratory judgment as a reservation of rights, it still cannot be said that there was "reasonable promptness" or that Gibraltar had informed Robinson "without delay" of its intention to assert nonliability.

In the additional abstract of record in the case it appears that on July 18, 1961, Exhibit A, attached to Gibraltar's complaint for declaratory judgment, showed that the insurance policy of Kenneth Robinson was cancelled with notice to him on July 18, and that on August 3, 1961, a refund of $33 was made to Robinson from the insurance policy. That, together with the telephone call of Casati (the adjuster for Gibraltar) on July 13, 1961, advising that the company was considering the question of its liability to the defendant, makes it clear that Gibraltar was aware of its right to disclaim liability as early as July 13, 1961. However, no action whatsoever was taken by Gibraltar until July 13, 1965. Under the rule previously referred to, that was not a prompt disavowal of liability. The same definitely applies to the filing of a declaratory judgment on October 28, 1966.

We have held that the declaratory judgment action could not have been brought because the statute of limitations had run. We realize that this is a matter of first impression in the Illinois courts. However, even if the five-year statute of limitations was not applicable, we refer to the case of Campbell v. Powers, 139 Ill 128, 28 NE 1062, cited with approval in People v. Thomas, 15 Ill2d 344, 348, 155 NE2d 16. In Campbell, the court said at page 135:

> "It is insisted, with great earnestness, that the Superior Court having placed its refusal to grant leave to amend upon erroneous grounds, and not

having considered whether its discretion should be exercised to permit the amendment, the decree must be reversed and the cause remanded, to the end that the chancellor may exercise such discretion in passing upon the granting of leave to amend, and that therefore the Appellate Court erred in exercising a discretion committed to the chancellor alone, and in refusing to reverse and remand. This is manifestly erroneous. The entire showing made to the chancellor is in the record, and *if, for any reason, the discretion should not have been exercised or the leave should have been denied, the action of the Superior Court in refusing the leave was properly affirmed.* It is of the judgment of the court appellant is permitted to complain, and not of the grounds or reasons upon which the court founded its decision." [Emphasis supplied.]

In the case before us, even if the statute of limitations was not controlling, nevertheless the court's ruling in dismissing the complaint was proper on the ground that Gibraltar waived whatever rights it might have had to dissociate itself with the insurance policy issued to Robinson by failing to promptly make a reservation of rights. In the complaint, no reference is made to a reservation of rights; therefore, the complaint did not state a justiciable cause of action. The judgment of the Circuit Court is affirmed.

LYONS, P. J., concurs.

BURKE, J., dissents:

The trial judge granted the motion to dismiss the amended complaint on the ground that the plaintiff (the insurer) was "out because of the statute of limitations." On appeal the defendant (Administrator of the Estate of Veronica Varkalis, Deceased), argues for affirmance of the order of dismissal on the ground that the trial

145

judge was right in ruling that the declaratory judgment complaint is barred by the five-year statute of limitations. The writer agrees with the position of the insurer that the action is not barred by the statute of limitations. A declaratory judgment action partakes of the nature of the litigation to which it pertains. The complaint asks the court to declare that the insurer is not obligated to pay any judgment that might be entered in favor of the administrator and against the insured, Kenneth Robinson. Any liability by the insurer to pay the administrator, who stands in the shoes of Robinson, arises from the insurance agreement between the insurer and the insured. Under all the pertinent decisions the declaratory judgment complaint is not barred by the ten-year or five-year limitation. All the terms of the contract, including the parties thereto, are clearly stated in the insurance policy. A cause of action on the insurance policy by the insured or someone standing in his shoes, (the administrator) against the insurer, could not arise until February 13, 1964, when the insurer was first notified of the pending lawsuit. The complaint was filed on October 28, 1966, well within the five-year, and of course, the ten-year limitation bar. The amended complaint averred ultimate facts entitling the insurer to a declaration that it was not obligated to defend the lawsuit or pay any part of a judgment which might be entered against Robinson. The administrator seeks a strange reverse application of the limitations act.

The opinion also relies strongly on a point not argued in the briefs by either party and concludes that the insurer waived its right to assert in a declaratory judgment action that it "owed no obligation liability to Robinson." The appellee, (administrator) apparently has no faith in this position. He supports the order for the

reason given by the trial judge—that the action is barred by the statute of limitations. The insurer did not waive its right to insist that the language of the policy absolved it from payment of any part of the judgment against Robinson. The insurer, on notification by the administrator of the pendency for two years of the action by the administrator against Robinson caused attorneys selected by the insurer to file their appearance and answer for Robinson in the action by the administrator against Robinson. When the case came on for trial these attorneys moved to withdraw as counsel for Robinson. The judge granted this request and appointed an attorney to represent Robinson who was then in the penitentiary. The attorney so appointed, represented Robinson in the trial of the lawsuit by the administrator against Robinson which resulted in a finding and judgment (after a remittitur of $4,500) in the amount of $25,000 against Robinson. The record does not show any objection by the administrator or anyone else to the substitution. The validity of the order substituting attorneys has not been challenged to this day. The record does not show any breach of the insurance contract by the insurer. The attorney appointed for Robinson faithfully performed his duty as Robinson's attorney. This record presents no evidence on which to base an estoppel against the insurer to assert its defense under the policy.

The administrator must recover on the insurance policy on the basis of the coverage afforded to Robinson and is bound by all the provisions, one of which stipulates that the policy does not apply to bodily injuries caused intentionally by or at the direction of the insured. It is conceded that the insured threw Veronica Varkalis out of his car and then deliberately and maliciously killed her by running over her with the car.

For this he was indicted for murder, pleaded guilty, was convicted and sentenced to the penitentiary where he is serving the sentence. Under these facts the insurance company has no obligation to pay the administrator anything.

For these reasons the order should be reversed and the cause remanded with directions to enter a judgment in favor of the insurer and against the administrator declaring that the insurer has no obligation to pay anything to the administrator of the Estate of Veronica Varkalis, Deceased.