SAMUEL DEWEY *ex rel.* DAVID G. SMITH *et al.*, Plaintiffs-Appellants, *v.* UNITED STATES FIDELITY AND GUARANTY INSURANCE Co., Garnishee-Defendant-Appellee.—(SAMUEL DEWEY *ex rel.* BRENDA ROSEN, Plaintiff-Appellant, *v.* UNITED STATES FIDELITY AND GUARANTY INSURANCE Co., Garnishee-Defendant-Appellee.)

(No. 61300;

First District (1st Division)—September 15, 1975.

Richard J. Friedman, of Chicago (Jack W. Rosen and Norman S. Esserman, of counsel), for appellants.

Goldenson, Kiesler, Berman & Brenner, of Chicago (Robert L. Kiesler and Marvin D. Berman, of counsel), for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

The plaintiffs, Brenda Rosen, David Smith and Karen Smith, filed personal injury complaints against Samuel Dewey in 1966. On November 4, 1969, a default judgment was entered in favor of Karen Smith for $500 and for David Smith for $1000; on November 7, 1969, a default judgment was entered in favor of Brenda Rosen for $10,000. The plaintiffs then filed garnishment actions against the defendant, United States Fidelity And Guaranty Insurance Company (USF&G), contending that Samuel Dewey was covered by an automobile liability policy with USF&G at the time of the accident. The trial court held in favor of USF&G on the ground that Dewey had breached the policy by failing to notify it of the lawsuits.

The case was heard by stipulation of facts. On November 4, 1969, the Smith case was assigned to Judge David A. Canel for trial. Smith's attorney called the offices of USF&G from Judge Canel's chambers on November 4 and advised the claim supervisor that Judge Canel was preparing to enter a judgment against Samuel Dewey in favor of Karen Smith. The claim supervisor did receive a telephone call on November 4 from an attorney whose name he could not recall. This was the first notice of the lawsuit received by USF&G. On November 7, 1969, the Rosen case was assigned to Judge Canel for trial. Rosen's attorney called the same claim supervisor from the chambers of Judge Canel and advised him that Judge Canel was preparing to enter a judgment against Samuel Dewey in favor of Brenda Rosen. The claim supervisor did receive the call from an attorney whose name he could not recall; and that call was the first notice of the Rosen lawsuit received by USF&G.

On November 14, 1969, the plaintiffs' attorneys sent letters to Dewey informing him of the judgments. Dewey sent the letters to USF&G after November 19, but prior to 30 days from the entry of judgment. Within that 30-day period from the entry of judgment USF&G took no action in the case.

Approximately four months after entry of the judgment, Dewey ad-vised USF&G that he had not been served with summons in either of the suits. After disclaiming liability and reserving its rights, USF&G agreed to seek to vacate the judgments. On July 6, 1970, attorneys for USF&G, by a special and limited appearance, filed a motion on behalf of Dewey pursuant to section 72 of the Civil Practice Act alleging that Dewey had not been served with summons and that the judgments should be va-cated. That motion was denied, and Judge Canel made a specific finding that Dewey had been properly served with summons.

The plaintiffs, conceding a breach of the insuring agreement by Dewey, contend that USF&G is now estopped by its conduct to deny liability. They argue that the insurer, upon receipt of a phone call from someone purporting to be a lawyer, should have immediately dispatched someone to the courtroom to advise the trial court; and that the insurer should have notified Dewey of the status of the lawsuits and the possible policy defense. It is difficult to perceive any reason why the insurer should be obligated to send a representative to the trial court under these circum-stances. An insurer, no less than any other person, is entitled to the pro-tection of our law and the orderly administration of our judicial process. It does not have unlimited personnel waiting to be dispatched to suddenly beckoning courtrooms. Second, the insurer's effectiveness as Dewey's representative would be extremely limited. USF&G was, to say the least, unprepared to defend on the day of trial. At best, it could get a con-tinuance, which under the assignment system used in the circuit court of Cook County in 1969, could be granted only by the head of the law division, and not by the trial judge. Last, and perhaps most important, the insurer had no time to investigate the reason for Dewey's failure to notify it of the lawsuits; it did not have time to notify Dewey to issue a disclaimer before going to Judge Canel's courtroom; and if it had ap-peared purporting to act for Dewey in the face of an obvious policy breach, it would then run an even greater risk of being estopped later to deny liability. Compare *Popovich v. Gonzales*, 4 Ill.App.3d 227, 228-229, 280 N.E.2d 757.

The plaintiffs argue that USF&G is a fiduciary and when it received notice of the suit from Dewey after November 19, it should have advised Dewey of his right to file a motion to vacate within 30 days. The plaintiffs emphasize the fact that more than 30 days had elapsed, noting the differ-ence between motions to vacate under section 50 and petitions under section 72. (Ill. Rev. Stat. 1971, ch. 110, pars. 50, 72.) Implicit in the plaintiff's argument is the assumption that USF&G was aware of some basis for a motion to vacate. There is not only no such proof, but it is undisputed that Dewey received notice of the judgment on November 19 but never informed USF&G until several months later that he had

not been served. Moreover, if Dewey had not been served with summons, it would make no difference whether he sought post-trial relief under section 50 or section 72. In the absence of proper service, the trial court would have no discretion, as it often has under those sections, but would be required to vacate the judgment.

The plaintiffs' reliance on *Allstate Insurance Co. v. Keller*, 17 Ill.App.2d 44, 149 N.E.2d 482, is misplaced. *Keller* stands for the general proposition that "the failure of an insurer promptly to elect to disclaim liability, upon discovering facts indicating a breach of the cooperation clause by the insured, constitutes a waiver by the insurer of any rights which might otherwise accrue to it as a result of the breach." 17 Ill.App.2d at 50-51.

*Keller* and all the cases upon which it relies are factually inapposite to this one. In *Keller*, after the insurer learned of the breach by the insured, it filed an appearance and answer and continued to represent him for a year and a half before disclaiming liability. The basis of the *Keller* rule is an equitable one. An insurer is a fiduciary and should not be permitted to *mislead* its insured by pretending to safeguard his interests. A prompt disclosure of the insurer's disclaimer will alert the insured and permit him to take what steps he deems necessary to protect his interests. In this case, neither by action or inaction did USF&G *mislead* Dewey that it was representing him since USF&G never had an opportunity to represent him.

The *Keller* case contains the expression that an insurance policy "is not just an agreement limited to the parties but by its very nature has become one cloaked with a public interest." (17 Ill.App.2d at 49.) This statement is often cited by personal injury plaintiffs in asserting their independent rights under the policy. Apart from the general proposition that in a garnishment action the judgment creditor stands in the shoes of the judgment debtor, the record in this case discloses that the plaintiffs never informed USF&G of the pending lawsuit although such notice would have been sufficient. (*Simmon v. Iowa Mutual Casualty Co.*, 3 Ill.2d 318, 322, 121 N.E.2d 509.) In sum, the plaintiffs knew that they had served Dewey but they never informed the insurer of the pendency of the lawsuit until the day of trial. To hold that USF&G had waived its rights to assert its policy defense under these facts would set a precedent that would provide a powerful instrument for collusive claims.

For these reasons we judge that the trial court properly ruled that USF&G had not waived its policy defense. The judgment of the circuit court is affirmed.

Judgment affirmed.

GOLDBERG and SIMON, JJ., concur.