SECOND DIVISION

December 14, 1999

No. 1-95-1337

EMPLOYERS INSURANCE OF WAUSAU )

A MUTUAL COMPANY, )

)

Plaintiff-Appellant, ) Appeal from the Circuit

) Court of Cook County

v. )

)

EHLCO LIQUIDATING TRUST, NOEL H. )

GOODMAN, and C.E. HEATH ) Honorable Aaron Jaffe,

COMPENSATION AND LIABILITY ) Judge Presiding.

INSURANCE COMPANY, )

)

Defendant-Appellees. )

JUSTICE GORDON DELIVERED THE SUPPLEMENTAL OPINION OF THE

COURT ON REMAND:

The instant appeal is considered on remand from the Illinois Supreme Court in the case of 
Employers Insurance v. Ehlco Liquidating Trust
, 186 Ill. 2d 127, 708 N.E.2d 1122 (1999).  That Court directed this Court to consider issues not previously addressed in 
Employers Insurance v. Ehlco Liquidating Trust
, 292 Ill. App. 3d 1036, 687 N.E.2d 82 (1997), 
aff'd in part, rev'd in part
, 186 Ill. 2d 127, 708 N.E.2d 1122 (1999), and the unpublished portion of that decision filed in accordance with Supreme Court Rule 23 (166 Ill. 2d R. 23).
(footnote: 1)  The parties agree that the only issue remaining for appellate review is whether the counterclaim for declaratory judgment filed by Ehlco Liquidating Trust and its managing trustee, Noel H. Goodman (collectively "Ehlco"), against Employers Insurance of Wausau, A Mutual Company ("Wausau"), was time-

barred.

BACKGROUND FACTS

I.  Prior Appeals

On February 26, 1993, Wausau instituted a declaratory judgment action against Ehlco, a trust created by order of the Delaware chancery court to resolve the contingent liabilities of Edward Hines Lumber Company ("Hines"), a dissolved Delaware corporation; Goodman, Ehlco's managing trustee; C.H. Heath, the successor to Employers Surplus Hines Insurance Company of Wilmington, Hines's excess carrier; and various other insurance companies.  Wausau sought a declaration that it had no defense or indemnity obligations under certain insurance policies in connection with a lawsuit filed against Ehlco relating to a contaminated industrial site in Albany County, Wyoming (the "Wyoming site").  One year later, on March 1, 1994, Ehlco filed a counterclaim, seeking a declaration that Wausau breached its duty to defend and indemnify Ehlco in connection with another lawsuit relating to an industrial site in Mena, Arkansas (the "Mena" site).  Wausau moved to dismiss Ehlco's counterclaim, arguing that it was barred by Arkansas' statute of limitations.  Ehlco moved for judgment on the pleadings as to both sites, arguing that Wausau breached its duty to defend the two underlying claims.  The circuit court denied Wausau's motion to dismiss and granted Ehlco's motions on the pleadings.  Wausau appealed pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

On review of Wausau's appeal, this Court reversed the trial court's grant of judgment on the pleadings to Ehlco.  As to the Wyoming site, we held, among other things, that the trial court erred in precluding Wausau from arguing that the insured breached the notice provisions of the insurance policies and remanded that issue to the circuit court for a determination as to whether Ehlco had satisfied the notice conditions of Wausau's policies.  
Employers Insurance
, 292 Ill. App. 3d at 1047-54, 687 N.E.2d at 90-94; 
Employers Insurance
, No. 1-95-1337, slip op. at 46 (September 10, 1997) (material unpublished under Supreme Court Rule 23 (166 Ill. 2d R. 23)).  As to the Mena site, this court held that Wausau had no defense or indemnity obligations because, consistent with the holding in 
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.
, 166 Ill. 2d 520, 655 N.E.2d 842 (1995), no "suit" had been filed.  
Employers Insurance
, 292 Ill. App. 3d at 1040-46, 687 N.E.2d 86-89.  We further held, academically, that coverage relative to the Mena site could have been precluded if Ehlco provided Wausau with late notice.  
Employers Insurance
, 292 Ill. App. 3d at 1047-54, 687 N.E.2d at 90-94; 
Employers Insurance
, No. 1-95-1337, slip op. at 46 (material unpublished under Supreme Court Rule 23).  On further appeal, the Illinois Supreme Court reversed this Court's holding as to the Wyoming site, finding that Wausau had breached its duty to defend and was estopped from asserting a late notice defense.  
Employers Insurance
, 186 Ill. 2d at 155, 158, 708 N.E.2d at 1137, 1138. It also reversed this Court's holding as to the Mena site, finding under its decision in 
Lapham-Hickey
 that a suit filed pursuant to a fully-executed consent decree was nonetheless a "suit" sufficient to trigger Wausau's duty to defend.  It further held that the parties should be given the opportunity to amend their pleadings in the circuit court to address the issue of whether Wausau had actual notice of the Mena lawsuit (
Employers Insurance
, 186 Ill. 2d at 143-44, 146, 708 N.E.2d at 1131, 1132) and remanded to this Court issues raised but not reached in the earlier appeal.

II.  Facts Relevant to Statute of Limitations Contention

Since the only issue before us involves Ehlco's counterclaim which was directed at the Mena site, we will recite only those facts relevant to that site.  Briefly, as explained in the prior appeals (
Employers Insurance
, 186 Ill. 2d 127, 708 N.E.2d 1122; 
Employers Insurance
, 292 Ill. App. 3d 1036, 687 N.E.2d 82), Hines and its subsidiary operated lumber treatment facilities at the Mena site from 1967 until 1978 when it was purchased by Mid-South Wood Products of Mena, Arkansas, Inc.  On March 18, 1982, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. §9601 
et
 
seq
. (West 1991), the United States Environmental Protection Agency (EPA) sent Hines a letter notifying it that it could be a "potentially responsible party" liable for costs incurred by the EPA in investigating and responding to environmental contamination at the Mena site.  This letter was sent to Hines at its principal place of business in Chicago, Illinois.  On that same date, but before receiving the EPA letter, Hines notified Wausau in writing that it had been verbally informed by the EPA that it intended to assert liability against Hines.  Wausau wrote Hines in Illinois on March 29, 1982, appearing to deny coverage, contending that the property damage occurred after its policies expired.  It also contended that the property damage was excluded because it did not result from sudden and accidental contamination or pollution.

On August 2, 1982 and on March 8, 1983, Hines's legal counsel wrote to Wausau, "formally" requesting that it defend Hines against the EPA's "investigation and proceeding."  Wausau responded on March 22, 1983, referring Hines to its prior correspondence outlining coverage.  In that response, Wausau also requested "a copy of the [EPA] action or correspondence you have, copies of any complaints or summons."  On August 3, 1987, Hines's counsel informed Wausau that Hines was near "final agreement" with the EPA relating to the Mena site.  Wausau responded on August 26, 1987, recounting its prior reservation of rights and requesting further information.  The submissions of the parties do not show that either Hines or its counsel responded to Wausau's March 22, 1983 or August 26, 1987 requests for information.

On May 16, 1987, the EPA, Hines, and Mid-South Wood Products of Mena, Arkansas, Inc., the entity that purchased the Mena site from Hines in 1978, executed a consent decree settlement agreement.  It appears from the record that Wausau received a copy of this agreement on December 14, 1987 from a source other than Hines.  On March 17, 1988, the EPA filed a federal court action in Arkansas under CERCLA and contemporaneously filed with that lawsuit a proposed fully-executed consent decree.  The federal court action concluded on May 16, 1988 when the federal court entered judgment on the proposed consent decree as executed by the parties, granting certain relief to the EPA.

In its counterclaim against Hines's insurance carriers, filed on March 1, 1994, Ehlco sought, as to Wausau, a declaration that Wausau was required to defend Hines and pay its costs of defense with respect to the EPA administrative action, a declaration that Wausau breached its duty to defend and was estopped from raising policy defenses with respect to its duties to defend and indemnify, an award of costs incurred, and an award of other relief deemed appropriate.  As stated earlier, the trial court made various rulings and granted Ehlco judgment on the pleadings.  Included among those rulings was the trial court's denial of Wausau's motion to dismiss Ehlco's counterclaim on the basis that it was barred by the five-year Arkansas statute of limitations.  The trial court ruled that the Illinois ten-year statute of limitations for actions on written contracts applied and that Ehlco's counterclaim was not time barred.  735 ILCS 5/13-206 (West 1994).

On appeal, Wausau contends that the trial court's ruling in this regard was incorrect.  It argues that the Illinois "borrowing statute" (735 ILCS 5/13-210 (West 1994)) mandates the application of Arkansas' five-year statute of limitations.  It alternatively argues that Ehlco's action was barred even under Illinois law because section 13-205 of the Code of Civil Procedure (the Code) (735 ILCS 5/13-205 (West 1994)), providing a five-year time period, rather than section 13-206 (735 ILCS 5/13-206 (West 1994)), providing a ten-

year period, applied.

DISCUSSION

For purposes of a motion to dismiss, all well-pleaded facts in the pleadings as well as reasonable inferences to be drawn from those facts are taken as true.  
E.g.
, 
Lykowski v. Bergman
, 299 Ill. App. 3d 157, 164-65, 700 N.E.2d 1064, 1070 (1998); 
Mackereth v. G.D. Searle & Co.
, 285 Ill. App. 3d 1070, 1074, 674 N.E.2d 936, 939 (1996); 
Arlt v. Great American Federal Savings & Loan Ass'n
, 213 Ill. App. 3d 584, 587, 572 N.E.2d 1115, 1117 (1991).
  A motion to dismiss should be granted by the trial court when, considering the relevant documents supporting the motion in the light most favorable to the party opposing the motion, the court finds no disputed factual issues and finds that no set of facts can be proved that would entitle the opposing party to recover.  
Mackereth
, 285 Ill. App. 3d at 1074, 674 N.E.2d at 939.  The review of a circuit court's ruling on a motion to dismiss is 
de
 
novo
.  
E.g.
, 
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732, 735 (1993); 
Brock v. Anderson Road Ass'n
, 287 Ill. App. 3d 16, 21, 677 N.E.2d 985, 989 (1997).

In accordance with general conflict of laws principles, an action will not be maintained if it is barred by the statute of limitations of the forum or if it is barred by the statute of limitations of another state whose statute has been "borrowed" in accordance with the forum state's "borrowing statute".  Restatement (Second) of Conflicts of Law §142, at 396-97 (1971).  See 
National Bank of Denison v. Danahy
, 89 Ill. App. 92, 96 (1899) (as statutes of limitations operate merely on the remedy, the law of the forum controls).  The Illinois "borrowing statute", found in section 13-210 of the Code of Civil Procedure (the Code) (735 ILCS 5/13-210 (West 1994)), provides as follows:

"When a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State."  735 ILCS 5/13-210 (West 1994).

Under this choice of law provision (see 
Miller v. Lockett
, 98 Ill. 2d 478, 486, 457 N.E.2d 14, 18 (1983) (borrowing statutes are choice of law rules)), the statute of limitations of another state will apply to bar an Illinois action "when the cause of action has arisen" in that state and when the other state's statute of limitations would in fact bar the action.  A third condition, judicially created (see 
Williams v. Fulton County Jail
, 575 F. Supp. 306, 308 (N.D. Ill. 1983) (residency requirement is a matter of judicial construction)), is the requirement that all parties be non-Illinois residents at the time the action accrued and until the limitations laws of the foreign state runs.  
Miller
, 98 Ill. 2d at 481-83, 457 N.E.2d at 16-17, citing 
Coan v. Cessna Aircraft
, 53 Ill. 2d 526, 293 N.E.2d 588 (1973); 
Delta Bag Co. v. Frederick Leyland & Co.
, 173 Ill. App. 38, 41-42 (1912); 
Danahy
, 89 Ill. App. at 97.  For purposes of the Illinois borrowing statute, a corporation is considered a resident only of the state in which it is incorporated; it is not considered a resident of the state in which it has its principal place of business or the state where it is licensed to do business.  
Ko v. Eljer Industries, Inc.
, 287 Ill. App. 3d 35, 42, 678 N.E.2d 641, 646 (1997); 
Nichols v. G.D. Searle & Co.
, 282 Ill. App. 3d 781, 784, 668 N.E.2d 1101, 1103 (1996); 
Le Blanc v. G.D. Searle & Co.
, 178 Ill. App. 3d 236, 237, 533 N.E.2d 41, 42 (1988).

The parties agree that the applicable statute of limitations in Arkansas is shorter than the ten-year Illinois statute of limitations applied by the trial court.  We, therefore, turn to an examination of other factors relevant under the foreign limitations act, namely, where the cause of action arose and whether any of the parties were Illinois residents when the cause of action arose and until the Arkansas limitations period expired.

Preliminarily, we note that the inquiry as to where the cause of action arose presupposes that the cause of action has in fact arisen.  Here, the alleged cause of action, which is the subject of this inquiry, is Ehlco's claim that Wausau breached its duty to defend Hines, Ehlco's predecessor corporation, with respect to the EPA lawsuit filed against Hines in Arkansas.  In its earlier opinion, our Supreme Court held that Wausau's duty to defend was triggered by the filing of the EPA lawsuit in the federal district court in Arkansas seeking entry of the proposed consent decree.  
Employers Insurance
, 186 Ill. 2d at 140-41, 708 N.E.2d at 1130.  That Court also found that, notwithstanding the triggering event of the filing of the lawsuit, Wausau would not have had a duty to defend Hines in the EPA action unless Hines tendered the lawsuit to Wausau for defense or Wausau had actual notice of the lawsuit.  
Employers Insurance
, 186 Ill. 2d at 143, 708 N.E.2d at 1131, citing 
Cincinnati Cos. v. West American Insurance Co.
, 183 Ill. 2d 317, 329-

30, 701 N.E.2d 499, 503-04 (1998).  It concluded that that issue could not be decided as a matter of law given the state of the pleadings and remanded that matter to the trial court with direction that the parties "be given the opportunity to amend their pleadings to address the actual notice issue in the circuit court."  
Employers Insurance
, 186 Ill. 2d at 144, 708 N.E.2d at 1131-

32.

A finding on the issue of notice would normally be a prerequisite to a determination as to whether the action was timely filed because the timeliness of the action is dependent upon the date upon which the action accrued, namely, the date of breach of the duty to defend.  Whether there was a duty to defend depends, however, in the first instance, upon whether the duty to defend was properly triggered by notice, an issue remanded to the circuit court for determination.  However, notwithstanding the mandated examination of the notice issue by the circuit court, we should, in the interest of judicial economy and our mandate from the Supreme Court (see 
Employers Insurance
, 186 Ill. 2d at 146-47, 708 N.E.2d at 1133) proceed to consider the questions of whether a cause of action arose and the residency of the parties.

As stated above, the Illinois "borrowing statute" requires the borrowing of the statute of limitations of the state where the cause of action arose, provided none of the parties resided in Illinois at the time the cause of action arose through the time the cause of action remained timely in the state whose statute is to be "borrowed."  In order to determine where the cause of action arose for purposes of applying the Illinois "borrowing statute", we first note the purpose of "borrowing statute"s.  As stated in 
Miller v. Stauffer Chemical Co.
, 99 Idaho 299, 581 P.2d 345 (1978):

"Borrowing statutes change the common law rule governing choice of the applicable statute of limitation.  R. Leflar, [American Conflicts Law §128], at 307 [(1968)].  Borrowing statutes attempt to promote uniformity of limitation periods and to discourage forum shopping by requiring the trial court to 'borrow' the statute of limitations of the jurisdiction that the legislature has determined bears the closest relationship to the actions, usually the jurisdiction where the action arose.  See generally Vernon, 
Statutes of Limitation in the Conflict of Laws:  Borrowing Statutes
, 32 Rocky Mt. L. Rev. 287 (1960); Ester, 
Borrowing Statutes of Limitation and Conflict of Laws
, 15 U. Fla. L. Rev. 33 (1962)."  
Miller
, 99 Idaho at 302, 581 P.2d at 348.

Generally, in contract actions, the determination of which state has the closest relationship requires the consideration of several factors, including:  the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation, and place of business of the parties.  Restatement (Second) Conflicts of Law §188(2), at 575 (1971).  The significance of each of these factors depends upon the issue involved.  For example, "[t]he state where performance is to occur under a contract has an obvious interest in the nature of the performance and in the party who is to perform."  Restatement (Second) Conflicts of Law §188, Comment e, at 580 (1971).  While many courts have "borrowed" the statute of limitations of the state where performance was to occur (see, 
e.g.
, 
Orschel v. Rothschild
, 238 Ill. App. 353, 358 (1925) (cause of action arose where money on contract of indemnity due but not paid); 
Financial Bancorp. v Pingree & Dahle
, 880 P.2d 14, 17 (Utah Ct. App. 1994) (breach of contract action arises where contract to be performed)), that is not so when the place of performance is divided among several states.  Restatement (Second) of Conflict of Laws §188, Comment e, at 580 (1971) ("place of performance can bear little weight in the choice of applicable law when *** performance by a party is to be divided more or less equally among two or more states").  Similarly, the location of the subject matter of the contract, such as the location of the risk insured by an insurance policy, is entitled to little weight when the subject matter or risk is located in more than one state.  See 
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.
, 166 Ill. 2d 520, 527, 655 N.E.2d 842, 845 (1995); Restatement (Second) of Conflict of Laws 
§193, Comment b, at 611-12 (1971) (while state where risk is located bears significant relationship to casualty insurance contract and will govern issues of contract validity and rights of the parties, risk must be located in one state; if contract covers a group of risks that are scattered throughout two or more states, location of risk is not given great weight).

In the instant case, there is no dispute that the policies covered risks located in more than one state.  The policies listed twenty-four states wherein Hines or its subsidiary did business or had operations.  Those states were: Illinois, Louisiana, Mississippi, New York, Oregon, Wisconsin, Indiana, Michigan, Idaho, Alabama, Arkansas, California, Connecticut, Iowa, Kansas, Georgia, Maryland, Minnesota, Nebraska, Oklahoma, Pennsylvania, Tennessee, Wyoming, and Colorado.  By far, the state with the most locations was Illinois.  Consequently, as will be further discussed below, the significance of the location of the Mena site in Arkansas is substantially diluted.  See 
Lapham-Hickey
, 166 Ill. 2d at 527, 655 N.E.2d at 845; Restatement (Second) of Conflict of Laws 
§193, Comment b, at 611-12 (1971); see also Restatement (Second) of Conflict of Laws §188, Comment e, at 580 (1971).

In determining the weight to be given the various contacts present in this case, we find the decision in 
Lapham-Hickey
, 166 Ill. 2d 520, 655 N.E.2d 842, cited by Ehlco, to be instructive.  In that case
, the insured sought a declaration regarding its right to recover defense costs associated with EPA proceedings relative to Minnesota property insured under a policy issued by Protection Mutual Insurance Company. 
 The court found that the insured was not entitled to recovery because no lawsuit had been filed.  
Lapham-Hickey
, 166 Ill. 2d at 533, 655 N.E.2d at 848.  Before reaching that conclusion, however, the court was required to determine whether Illinois or Minnesota substantive law governed the construction and interpretation of the all-risk insurance policy that covered property located in six states.  
The court chose Illinois law based on that state's contact with the insurance contract.  Those contacts included the fact that the policy was delivered to Lapham-Hickey in Illinois, that Lapham-Hickey was incorporated in Illinois, and that Protection Mutual was licensed to do business in Illinois.  The court gave little weight to the fact that the property was located in Minnesota because the policy covered property located in six states.  Instead, the court chose to apply Illinois law "to obtain a consistent interpretation of the policy."  
Lapham-Hickey
, 166 Ill. 2d at 527, 655 N.E.2d at 845.

Here, applying the analysis in 
Lapham-Hickey
, we find that Illinois bears the most significant relationship to the contract dispute.  See 
Miller
, 99 Idaho 299, 581 P.2d 345 (state will "borrow" statute of limitations of jurisdiction that bears the closest relationship to the action).  As stated above, 
the insurance policies covered risks located in more than one state such that the location of the Mena property in Arkansas was entitled to little weight and could not be a determinative factor in choosing the state that bears the closest relationship.  See 
Lapham-Hickey
, 166 Ill. 2d at 527, 655 N.E.2d at 845; Restatement (Second) Conflict of Laws §193, Comment b, at 611-

12 (1971)).  Similarly, because the policies covered risks in more than one state, performance under the insurance policies relative to those risks would occur in more than one state thereby making the location of the risk a factor of minimal weight.  See Restatement (Second) Conflicts of Law §188, Comment e, at 580 (1971).

Having rejected the location of the Mena property in Arkansas as a significant factor, we look to the presence of other contacts found relevant in 
Lapham-Hickey
.  Those contacts include:  the issuance of the insurance policies to Hines in Illinois, the location of Hines's principal place of business in Illinois, and the licensing of Wausau to do business in Illinois.  See 
Lapham-Hickey
, 166 Ill. 2d at 527, 655 N.E.2d at 845.  See also 
United States Fire Insurance Co. v. CNA Insurance Co.
, 213 Ill. App. 3d 568, 572 N.E.2d 1124 (1991) (under Illinois choice of rules, an insurance policy is generally governed by the law of the state where the policy is issued or delivered or by the law of the place of the last act to give rise to a valid contract, where the policy was signed); 
Jadczak v. Modern Service Insurance Co.
, 151 Ill. App. 3d 589, 503 N.E.2d 794 (1987) (same).  Additional contacts with Illinois include the fact that correspondence relative to the EPA lawsuit was directed to Hines in Illinois; Hines's requests to Wausau for defense originated in Illinois; Wausau's responses to those requests were sent to Hines in Illinois; and Hines's legal counsel that provided Hines's defense with respect to the EPA proceedings was located in Illinois and would have billed its defense fees to Hines in Illinois.  Finally, any monies found to be owing Hines by Wausau as a result of the counterclaim would have been due Hines in Illinois.  See Restatement (Second) Conflict of Laws §188(2) (1971) (contacts establishing significant relationship:  place of contracting; place of negotiation of contract; place of performance; location of subject matter of contract; and domicile, residence, nationality, place of incorporation and place of business of the parties).

While 
Lapham-Hickey
 is distinguishable from the instant case because 
it did not involve the Illinois "borrowing statute" or the issue of where the cause of action arose, we find it persuasive nonetheless.  It
 involved the application of the most significant relationship test, a test which is also relevant under "borrowing statute" analysis.  See 
Miller
, 99 Idaho 299, 581 P.2d 345.  In 
Lapham-Hickey
, as in the instant case, the dispute involved an insurance policy that covered properties located in several states.  Finally, as discussed above, in 
Lapham-Hickey
, as in the instant case, the forum state had significant contacts with the dispute because the policy was issued in the forum state, the insured was incorporated in the forum state or had its principal place of business there, and the insurer was licensed to do business in the forum state.

For the reasons stated above, we reject Wausau's argument that the Illinois court should "borrow" Arkansas' statute of limitations because the Mena property was located there.  We also find Wausau's reliance on 
Nichols v. G.D. Searle & Co.
, 282 Ill. App. 3d 781, 668 N.E.2d 1101 (1996) and 
Edward Hines Lumber Co. v. Vulcan Materials Co.
, 669 F. Supp. 854 (N.D. Ill. 1987), misplaced.  In those cases, the plaintiffs sought recovery in tort for physical injury or property damage, and the Illinois courts 
"borrowed" the statutes of the states where the injuries or damage occurred.  In 
Vulcan Materials
, the property that was allegedly damaged was the property involved in the instant lawsuit, the Mena site.  However, that coincidence is of no avail since the actions in 
Nichols
 and 
Vulcan Materials
 were premised on tort theories and since in tort actions there is a presumption in favor of the application of the law of the place of injury unless another jurisdiction has a greater relationship.  
Nichols
, 282 Ill. App. 3d at 784, 668 N.E.2d at 1103; Restatement (Second) of Conflict of Laws §§145-147 (1971) (choice of law rules for tort actions).  As discussed above, in contract disputes, the location of the insured risk will not be accorded much weight when, as here, the insurance policy insures risks located in more than one state.  See Restatement (Second) of Conflicts of Law §193, Comment b, at 611-12 (1971).
(footnote: 2)
Having found that Illinois had a significant relationship to the cause of action presented in Ehlco's counterclaim, we next turn to the residency requirements judicially imposed upon the Illinois "borrowing statute" (see 
Williams v. Fulton County Jail
, 575 F. Supp. 306, 308 (N.D. Ill. 1983) (residency requirement is a matter of judicial construction)).  As discussed above, Illinois courts will not apply the statute of limitations of another state or foreign country if any of the parties to the action were Illinois residents at the time the cause of action accrued until the time the limitations laws of the foreign state had run.  
Miller
, 98 Ill. 2d at 481-83, 457 N.E.2d at 16-17, citing 
Coan v. Cessna Aircraft
, 53 Ill. 2d 526, 293 N.E.2d 588 (1973); 
Delta Bag Co.
, 173 Ill. App. at 41-42; 
Danahy
, 89 Ill. App. at 97.  Here, as discussed above, our Supreme Court held that Wausau's duty to defend was not triggered until the filing of the EPA lawsuit.  That Court further held that Wausau's duty also was not triggered unless Hines tendered the lawsuit to Wausau or Wausau had actual notice of the lawsuit and directed the trial court on remand to make findings on that issue.  
Employers Insurance
, 186 Ill. 2d at 143-45, 708 N.E.2d at 1131-32.  Since the EPA lawsuit was filed on March 17, 1988, it would appear that the date of breach could not have occurred prior to March 17, 1988, although it could have occurred later.
(footnote: 3)  We thus examine the residency of the parties as of March 17, 1988 and thereafter.

Ehlco's counterclaim alleged that Wausau was a "mutual insurance company organized and existing under the laws of Wisconsin and was licensed to do business and had offices in Illinois."  It alleged that Ehlco, a liquidating trust, was created by a trust indenture to resolve the contingent liabilities of Hines, a dissolved Delaware corporation having its principal place of business in Illinois.  It further alleged that Ehlco's trustees were appointed by order of the Delaware chancery court and that Ehlco had its business address in Illinois.  The counterclaim stated that Noel H. Goodman, an Illinois resident, was appointed managing trustee of Ehlco Liquidating Trust and that C.E. Heath, a Delaware insurance corporation, was the successor to Employers Surplus Hines Insurance Company of Wilmington, Delaware, operating in Illinois on a surplus Hines basis.  Neither the counterclaim nor the attachments to the counterclaim give the date of Hines's dissolution or the dates of Ehlco's creation and Goodman's appointment as Ehlco's managing trustee.  We know, however, that Hines was in existence in 1988 when the EPA lawsuit was filed because the EPA lawsuit and the settlement decree named Hines as a party.  It would appear that Hines was not in existence five years later, when the Arkansas statute of limitations would have expired (Ark. Code Ann. §16-56-111 (providing five-year statute of limitations to causes of action relating to written contracts)), since Wausau's declaratory judgment action filed in 1993 named Ehlco and Goodman rather than Hines.

Ehlco concedes that none of the corporate entities were Illinois residents because none were incorporated in Illinois.  It argues, however, that defendant Noel Goodman, the managing trustee of Ehlco, was an Illinois resident and that his Illinois residency defeats the nonresidency requirement of the Illinois "borrowing statute".  We disagree.

As explained in 
City Investing Co. Liquidating Trust v. Continental Casualty Co.
, 624 A.2d 1191, 1196-97 (Del. 1993), a liquidating trust has as its primary purpose the liquidation and distribution of the assets of a dissolved corporation transferred to it upon the dissolution.  It is the successor of the corporation whose assets it administers and, "'in effect, the alter ego of the predecessor corporation.'"  
City Investing Co.
, 624 A.2d at 1197, quoting 
In re Tru Block Concrete Products Inc.
, 27 B.R. 486, 490 (Bankr. S.D. Cal. 1983).
(footnote: 4)  Delaware law provides for the appointment of a trustee by the court of chancery upon the application of any creditor, stockholder, or director of the corporation or any other person who shows good cause; and the trustee's powers continue "as long as the court of chancery shall think necessary."  Del. Code tit. 8, §279.  See 16A Fletcher Cyclopedia of Private Corporations §8178, at 365 (1995 rev. ed.) (hereinafter referred to as Fletcher Cyclopedia) ("trustees derive their authority from the statute, even though designated as trustees by the court's dissolution decree").  This provision applies when the dissolved corporation has no legal existence and can no longer wind up its unfinished business.  
In re Citadel Industries, Inc.
, 423 A.2d 500, 504 (Del. Ch. Ct. 1980).  In accordance with Delaware law, the court-appointed trustee is authorized to:

"take charge of the corporation's property, and to collect the debts and property due and belonging to the corporation, with the power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, *** and to do all other acts which might be done by the corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation."  Del. Code tit. 8, §279 (1998).

Here, the cause of action brought by Ehlco and Goodman  accrued, if at all, to Hines.  Since Hines was a Delaware corporation, its dissolution and the liquidation of its assets would have been governed by the laws of Delaware.  Presumably, Goodman's appointment as managing trustee of Ehlco, the liquidating trust and Hines's successor, was made by the Delaware chancery court in accordance with Delaware law cited above.
(footnote: 5)  Based upon Delaware law, therefore, Goodman was a proper party to the counterclaim which arose before Hines's dissolution but which began thereafter.  See 16A Fletcher Cyclopedia §8189, at 396 ("[w]here the statute provides a period after dissolution for the filing of suits by the statutory trustees, the suit must be brought in their name since the corporation is without capacity to sue in its own name").  See also 
Citadel Industries
, 423 A.2d at 504 (under Del. Code tit. 8, §279, the dissolved corporation has no legal existence).  However, because Goodman's office as liquidating trustee is derived from his appointment under Delaware law by the Delaware court, to whom he must report and account, we believe, for purposes of the "borrowing statute", that he should be considered a Delaware juridical entity and that his personal Illinois residency should not prevent the Illinois court from "borrowing" another state's statute of limitations.  To give import to Goodman's individual Illinois residency would erode the limitation applied in Illinois "borrowing statute" analysis that corporate entities be considered residents only of their state of incorporation.  See 
Le Blanc
, 178 Ill. App. 3d 236, 533 N.E.2d 41 (the residency of a corporation is the state or country by and under whose laws it was organized).

Arguably, even if Goodman was not appointed by the Delaware chancery court but was somehow appointed in Illinois, that fact, in all likelihood, would not alter the result under the "borrowing statute" as far as pertains to the residency issue.  While Goodman was a necessary party to the action, he was necessary because of his status as a Delaware trustee of the Delaware liquidating trust that succeeded the dissolved Delaware corporation.  Goodman appears to have no personal beneficial interest in the recovery.  The real party in interest was not Goodman, individually, the Illinois resident, but Goodman, the managing trustee of the successor Delaware trust.  When a party to a lawsuit has no beneficial interest in the recovery, his residency will not be considered in the "borrowing statute" analysis, and his residency in the forum state will not prevent that state from "borrowing" another state's statute of limitations.  
Cf.
 
Broadfoot v. Everett
, 270 N.C. 429, 154 S.E.2d 522 (1967) (where in applying North Carolina "borrowing statute" North Carolina court refused to consider residency of plaintiff, a North Carolina ancillary administrator, finding that the real parties in interest were the heirs of the intestate who were Maryland residents).

The lack of Illinois residents as real parties in interest would not, however, require application of another state's statute of limitations to Ehlco's counterclaim since, as discussed above, that cause of action had the most significant contacts with Illinois and should be governed by Illinois law, including Illinois' applicable statute of limitations.
(footnote: 6)  Thus, the question now becomes whether the period of limitation should be five years under section 13-205 of the Code (735 ILCS 5/13-205 (West 1994)), as Wausau argues, or ten years under section 13-206 of the Code (735 ILCS 5/13-206 (West 1994)), as Ehlco argues.

Section 13-205 sets forth a five-year time limit for various actions not here relevant and concludes with a "catch-all" of "all civil actions not otherwise provided for."  735 ILCS 5/13-205 (West 1994).  Section 13-206 sets forth a ten-year time limit for various actions including actions on "written contracts."  735 ILCS 5/13-206 (West 1994).  In reliance on 
Gibraltar Insurance Co. v. Varkalis
, 115 Ill. App. 2d 130, 253 N.E.2d 605 (1969), 
aff'd on other grounds
, 46 Ill. 2d 481, 263 N.E.2d 823 (1970), Wausau contends that the five-year statute of limitations under section 13-205 should apply because Ehlco's declaratory judgment action was a "civil action[] not otherwise provided for" (735 ILCS 13-205 (West 1994)).
(footnote: 7)
Gibraltar Insurance
 involved a declaratory judgment action in which the plaintiff insurer sought an adjudication of the rights of the parties under an automobile policy.  The trial court dismissed the complaint, finding it was barred by the predecessor provision to section 13-205 (Ill. Rev. Stat. 1965, ch. 83, par. 16 recodified at 735 ILCS 5/13-205 (West 1992)).  The appellate court affirmed the dismissal on two grounds.  First, it found that the declaratory judgment action was subject to the five-year statute of limitations as a "civil action[] not otherwise provided for" because it was a statutory right of action.  The court emphasized the fact that the declaratory judgment act created the vehicle by which the lawsuit could be filed.  It did not consider the substantive nature of the action for which such declaratory relief was being sought.  Second, the court found that, "even if the statute of limitations was not controlling," the complaint did not state a cause of action because it did not allege that the insurer made a reservation of rights so as to prevent the waiver of any policy defenses that the insurer could have asserted against its insured.  
Gibraltar Insurance
, 115 Ill. App. 2d at 145, 253 N.E.2d at 613.

We find the appellate court's decision in 
Gibraltar Insurance
 relative to the applicability of section 13-205 to declaratory judgment actions to be unpersuasive.  Initially, we note that, on review, the Supreme Court found error with the appellate court's dismissal of the action on the statute of limitations ground.  
Gibraltar Insurance
, 46 Ill. 2d 481, 263 N.E.2d 823.  That Court found that the appellate court made an erroneous conclusion as to the date the cause of action accrued such that the cause of action was timely under the five-year and ten-year statute of limitations under consideration.  
Gibraltar Insurance
, 46 Ill. 2d at 484-85, 263 N.E.2d at 825.  The court then specifically stated that it was "express[ing] no opinion on the matter" of whether an action for declaratory judgment as to the rights of the various parties under a contract of insurance was subjecto to the five-year or ten-

year statute of limitations.  
Gibraltar Insurance
, 46 Ill. 2d at 486, 263 N.E.2d at 826.  The Court subsequently affirmed the dismissal of the action based upon the appellate court's second basis that the insurer was estopped from raising any policy defenses.  
Gibraltar Insurance
, 46 Ill. 2d at 486-88, 263 N.E.2d at 826-27.

The weakness in the appellate court's analysis of the statute of limitations issue in 
Gibraltar Insurance
 is highlighted in the dissent to that decision which stated that "a declaratory judgment action partakes of the nature of the litigation to which it pertains" and that the action arose from the insurance agreement between the parties.  
Gibraltar Insurance
, 115 Ill. App. 2d at 146, 253 N.E.2d at 613 (Burke, J., dissenting).  We agree with this dissent and find fallacy with the majority's reasoning.  We note the majority, in reaching its conclusion that the declaratory judgment action was governed by the five-year statute of limitations, relied upon a case that was not a declaratory judgment action.  That case, 
Wakat v. Harlib
, 253 F.2d 59 (7th Cir. 1958), involved a civil rights cause of action.  The court in 
Wakat
 held that the civil rights action was a statutory right of action, based upon the federal Civil Rights Act, and thus a "civil action not otherwise provided for" within the meaning of the five-year statute of limitations.  We believe that a declaratory judgment action that seeks a declaration of the rights of parties pursuant to a written contract should not be analogized to a civil rights action.  There is no question that the rights and liabilities of the parties to a civil rights action derive solely from the statute that creates it.  However, the rights and liabilities of the parties to a contract who seek declaratory judgment relief do not derive from the statute that creates declaratory judgment actions.  Rather, those rights and liabilities derive from the contract which creates them.  For that reason, the declaratory judgment action that seeks construction of a contract should be subject to the statute of limitations for written contracts, namely, section 13-206 of the Code.
(footnote: 8)
Support for the conclusion that the ten-year statute of limitations applies to declaratory judgment actions that seek a declaration of the rights and liabilities of the parties to an insurance contract can be found in 
Shelton v. Country Mutual Insurance Co.
, 161 Ill. App. 3d 652, 515 N.E.2d 235 (1987).  There, the insured brought a declaratory judgment action seeking a declaration that she was entitled to underinsured motorist benefits.  The court stated that "in the absence of a specific and clear provision regarding the period within which uninsured motorist claims must be brought, the ten-

year statute of limitations for contract actions must govern."  
Shelton
, 161 Ill. App. 3d at 656, 515 N.E.2d at 237.  In 
Shelton
, however, the policy did provide a two-year limitation period for commencing suit; and that provision was applied over the ten-year statute of limitations for contract actions.  
See
 
Norfleet v. Safeway Insurance Co.
, 144 Ill. App. 3d 838, 840-841, 494 N.E.2d 720, 721-22 (1986) (declaratory judgment action seeking determination of rights under uninsured motorist and arbitration provisions of automobile insurance policy; parties conceded that cause of action was predicated upon breach of contract and was subject to ten-year statute of limitations).  
Cf.
 
Moses v. Coronet Insurance Co.
, 192 Ill. App. 3d 921, 549 N.E.2d 739 (1989) (finding insured's action to compel arbitration was essentially a contract action based solely upon contract with insurer and thus was governed by the ten-year statute of limitations applicable to contract actions); 
Murphy v. United States Fidelity & Guaranty Co
, 120 Ill. App. 3d 282, 458 N.E.2d 54 (1983) (same).  Thus, given our conclusion that section 13-206 of the Code applies to Ehlco's counterclaim, there can be no doubt that, assuming Wausau owed a duty to defend to Hines and assuming Hines's cause of action accrued after March 17, 1988, the date the EPA lawsuit was filed, Ehlco's counterclaim asserting Hines's rights was timely filed in 1994.

For the foregoing reasons, and subject to the mandate of the Supreme Court, we find that if notice was properly served to trigger the duty to defend and the accrual of the cause of action, matters to be determined by the trial court, the statute of limitations determination of the trial court shall stand as affirmed.  Pursuant to the mandate of the Illinois Supreme Court, this matter is herewith remanded to the trial court for further proceedings in accordance with all of the instructions of the Supreme Court.

Remanded for further proceedings.

COUSINS, P.J. and McBRIDE*, J., concur.

*
Justice Leavitt originally sat on the panel in this appeal.  Upon Justice Leavitt's retirement, Justice McBride substituted in the decision of this appeal.  She has read the briefs and listened to the tape of oral argument.
  

FOOTNOTES
1:     
The issues identified in the Supreme Court's opinion were whether:

"'
the trial court erred in entering judgment on the pleadings with respect to the Mena site without first permitting Wausau to file an answer to Ehlco's Mena counterclaim; erred in denying Wausau's motion to dismiss Ehlco's Mena counterclaim on statute of limitations grounds; and erred in denying Wausau the opportunity to conduct discovery regarding its duty to defend in the underlying Mena proceedings.'"  
Employers Insurance
, 186 Ill. 
2d at 146, 708 N.E.2d at 1132-33, quoting 
Employers Insurance v. Ehlco Liquidating Trust
, No. 1-95-1337, slip op. at 15 n.4
 
(September 10, 1997) (material unpublished under Supreme Court Rule 23 (166 Ill. 2d R. 23)).

2:     
It is on this basis that we also distinguish 
Bridge Products, Inc. v. Quantum Chemical Corp.
, 1990 WL 19968 (N.D. Ill. 1990), an unreported memorandum opinion cited by Wausau.  In that breach of contract case, the federal court, applying the Illinois "borrowing statute", borrowed the statute of limitations of Virginia because the property that was the subject of the contract dispute was located in Virginia.  It does not appear from the facts of that case that the contract involved property located outside of Virginia.  We would agree that the location of the subject matter is a significant factor to the application of the "borrowing statute" but only when the subject matter is located in one state.  See Restatement (Second) Conflict of Laws §188, Comment e, at 580-81 (1971).  Here, as discussed in the text of this opinion, Wausau's insurance policies covered properties located in more than one state.

3:     
Wausau argues that the alleged breach of duty to defend occurred on March 29, 1982 when, as alleged in Ehlco's counterclaim, Wausau's Arkansas office "denied coverage of the USEPA Administrative Action."  We disagree.  First, as discussed in the text of this opinion, our Supreme Court held that the duty to defend was triggered when the EPA lawsuit was filed.  That lawsuit was filed in 1988.  Second, notwithstanding Ehlco's allegation that Wausau denied coverage on March 29, 1982, other submissions by the parties showed that issue of coverage remained unresolved, given Hines's continued requests for defense through 1987 and Wausau's response in 1987 setting forth reservation of rights language and requesting copies of the "complaint or summons."  Moreover, as also discussed in the text, the allegations in Ehlco's counterclaim are not determinative of this issue since our Supreme Court has directed the trial court to allow amendments to the pleadings on the issue of actual notice of the EPA lawsuit, finding that the receipt of actual notice by Wausau would trigger its duty to defend (
Employers Insurance
, 186 Ill. 2d at 143-44, 146, 708 N.E.2d at 1131, 1132).

4:     
The purpose of a liquidating trust is to avoid taxes.  See 
City Investing Co.
, 624 A.2d at 1196-97, for explanation of tax benefits.

5:     
We note that Ehlco's counterclaim alleges that Goodman was appointed managing trustee of Ehlco Liquidating Trust; it does not allege who made the appointment.  However, for the reasons discussed in the text, we feel safe in assuming, for purposes of this opinion, that the appointment was made by the Delaware chancery court in accordance with Delaware law.

6:     
We, therefore, feel no compulsion to direct the trial court to further ascertain the facts surrounding the appointment of the trustee, since the trustee's juridical residency, whether in
 Illinois or elsewhere, would not, in any event, be dispositive, given our conclusion that 
there is no basis to "borrow" another state's statute of limitations because Illinois has the most significant contacts.

7:     
Wausau also cites to 
National Underground Construction Co. v. E.A. Cox Co.
, 273 Ill. App. 3d 830, 652 N.E.2d 1108 (1995) for its contention that a declaratory judgment action is subject to the five-year statute of limitations provided in section 13-205 of the Code.  
National Underground
 is wholly inapposite.  It does not support that contention nor does it discuss the applicability of section 13-205 to declaratory judgment actions.  The only mention of that provision occurred in the court's outline of the defendant's arguments before the trial court which included a contention that the plaintiff's declaratory judgment action was barred by section 13-205 of the Code.  Neither the trial court nor the appellate court reached that issue.

8:     
Gibraltar
 relies on a second case which did involve a declaratory judgment action.  That case, 
Crerar Clinch Coal Co. v. Board of Education
, 13 Ill. App. 2d 208, 141 N.E.2d 393 (1957), did not, however, involve a statute of limitations issue.  The issue before the court was whether plaintiff's declaratory judgment action, which sought construction of a contract, became a suit for accounting based upon plaintiff's prayer for relief which included a request for an accounting.  The defendant argued that plaintiff's request for an accounting transformed plaintiff's action into an equitable proceeding and required the application of equitable principles.  The court disagreed stating that a declaratory judgment action is "statutory and 
sui
 
generis
" and that it retained its nature notwithstanding the fact that plaintiff's request for relief included a request for an accounting.  
Crerar Clinch
, 13 Ill. App. 2d at 218, 141 N.E.2d at 398.  We do not believe this court's characterization of declaratory judgment actions as being statutory in nature would allow an analogy to be made with civil rights actions, as was made by the 
Gibraltar Insurance
 court, which are truly "civil actions not otherwise provided for" within the meaning of section 13-205 of the Code (735 ILCS 5/13-205 (West 1994)).  As discussed in the text of this opinion, the rights and liabilities of the parties to a civil rights action are derived from the statute creating the action.  The rights and liabilities of the parties to a declaratory judgment action are derived from the contract for which construction is sought.